A. BLAKE BILLINGSLEA *v.* ALBERT TARTELL

(CC 698)

Submitted April 24, 1945. Decided June 12, 1945.

*J. Harper Meredith,* for plaintiff.
*William P. Lehman,* for defendant.

ROSE, JUDGE:

A. Blake Billingslea, a practicing attorney of Fairmont, filed his bill of complaint in the Circuit Court of Marion County against Albert Tartell, seeking recovery of an attorney's fee and expenses and to attach property of defendant for that purpose, and for general relief.

The trial chancellor sustained a motion to quash the order of attachment, sustained a demurrer to special plea No. 1, overruled a demurrer to special plea No. 2, and, upon the joint motion of counsel for the parties, certified to this Court the points of law which arose upon the court's action in so doing.

The facts alleged in the declaration are, briefly, as follows:

The defendant, Albert Tartell, was a coal miner who suffered an injury in the course of his employment, for which he was awarded compensation for temporary total disability. He then employed one Stubbs, an attorney, to prosecute his claim for further compensation. The efforts of Stubbs were unsuccessful, whereupon the defendant employed the plaintiff as an additional attorney, who, after many hearings before the compensation commissioner and the workmen's compensation appeal board, procured an additional award amounting to $3,200.00, which amount, less an attorney's fee of $350.00

paid to Stubbs, and the amount previously paid to Tartell by way of compensation, was paid to Tartell in a single sum. The plaintiff in this suit then made claim for a fee of $1,090.00 and expenses in the amount of $177.25. Payment being refused by Tartell, this suit followed.

The grounds for attachment set out in the affidavit are (1) that the defendant had disposed of all his real estate in Marion County with intent to defraud his creditors, and (2) that the defendant had property which he concealed, specifying in particular that a considerable part of the sum received from the compensation fund had been placed on deposit in the First National Bank of Monongah, under his name as trustee, etc., and in the name of Sarah Tartell, his wife. Upon proper suggestion by the plaintiff said bank was ordered to appear and disclose "in what sum it is indebted to the Defendant, Albert Tartell and what effects of the said Defendant it has in its hands". The defendant filed a written motion to quash the "attachment and garnishment" on the ground that the affidavit upon which the order of attachment was issued showed, on its face, that the funds in the bank sought to be reached by the order on suggestion were received by the defendant under his compensation claim and are therefore exempt from attachment and garnishment under the provisions of chapter 23, article 4, section 18 of the Code. Special Plea No. 1 alleges, in great detail, the defendant's version of the particulars of the plaintiff's employment and performance thereunder. Summarized, plea No. 1 shows that Billingslea and Stubbs, while not partners, had offices together; that Stubbs, after having failed to obtain any substantial additional compensation for the defendant, although employed under a written contract for a contingent fee of twenty-five per cent of the recovery, notified Tartell that he would proceed no further under his contract unless Tartell would also employ Billingslea as associate counsel upon a contract for fifty per cent of the recovery; that Tartell, seeing no other way to protect his claim, signed such a contract with Billingslea, but on the fol-

lowing day notified both Billingslea and Stubbs that he would not permit them to proceed further under the contract; that thereafter these two lawyers jointly and separately conducted the case, sometimes together and at other times separately, but signing most of the papers therein as "Billingslea and Stubbs"; that during the prosecution of the case Stubbs entered the military service of the United States, after which Billingslea conducted the case alone, and filed with the compensation commissioner the Stubbs contract, but never filed his own; that upon the allowance of the award, as above stated, the commissioner paid to Stubbs, under his contract, the sum of $350.00, being the maximum to which he was entitled thereunder; and that in law this sum is the only fee which an attorney or attorneys in the case can collect, under the provisions of Code, 23-5-5.

Special Plea No. 2 sets up the same details as Special Plea No. 1, but further alleges that the funds held by the suggestee, First National Bank of Monongah, are, in their entirety, parts of compensation paid to the defendant Tartell by the compensation commissioner and are as follows: (1) The sum of $950.00 in a savings account in said bank in the name of the defendant and his wife, Sarah Tartell; and (2), two sums of $500.00 each in the names of the defendant's two minor children, respectively, "by Albert Tartell, trustee"; that no part thereof is represented by money derived from other sources, and makes claim that these three sums are exempt from execution and attachment under the provision of Code, 23-4-18.

The points of law certified are as follows:

"1. That the defendant's motion to quash the attachment herein, should be sustained.

"2. The affidavit filed by the plaintiff with the Clerk for the purpose of obtaining the order of attachment, shows that the money sought to be attached, which is on deposit in the name of the defendant in the First National Bank of Monongah, in Monongah, Marion County, West Virginia, was all received by the defendant as compensation for injuries received by him in the

course of his employment from the West Virginia Workmen's Compensation Commissioner, and that by virtue of Chapter 23, Article 4, Section 18 of the Official Code of West Virginia, such money is exempt from attachment for the reason that it was paid to the defendant as compensation out of the West Virginia Workmen's Compensation Fund.

"3. That the defendant's amended Plea No. 1 is demurrable for the reason that Chapter 23, Article 5, Section 5 of the Official Code of West Virginia, does not make invalid and unenforceable as between the attorney and his client a contract for attorney's fees for services rendered by said attorney to said client, in prosecuting his claim for Workmen's Compensation, which contract of employment provides for compensation in excess of the schedule of fees fixed in said last named statute.

"4. That the defendant's Plea No. 2 is not demurrable for the reason that it shows that the money attached by the plaintiff in this proceeding, in the hands of the First National Bank of Monongah, in Monongah, Marion County, West Virginia, deposited in the name of the defendant, represents money received by the defendant as compensation from the West Virginia Workmen's Compensation Fund, and by virtue of Chapter 23, Article 4, Section 18 of the Official Code of West Virginia, such money is exempt from attachment."

We are of opinion that the motion to quash the order of attachment and the garnishment should have been overruled. The allegations in the affidavit that a part of the sums received by way of compensation were in the bank in the name of defendant's wife were solely to show the facts relied upon in support of that ground of attachment, which alleged that defendant had property which he had concealed or which he had transferred to defraud his creditors. This allegation in the affidavit in no way limited or restricted the property which the attachment or order of suggestion could reach. The order of attachment was in strict statutory form and directed the sheriff to attach the estate of defendant, Albert Tartell, "suffi-

cient to pay the sum of $1267.25" and the costs of the suit. The order of suggestion directed to the bank required that institution to show its indebtedness to Tartell and his effects in its hands. What effects might be attached or found in the hands of the bank, can only appear from returns of the sheriff and of the bank. If exempt property should be found involved in such return, its release can be procured by proper proceedings after the returns are made, but the attachment order and the order of garnishment were legal in all respects and founded upon a sufficient affidavit, and, therefore, were good against the motion to quash.

The single question arising at this stage of the case, under Special Plea No. 1, is that set out in the third point certified. Code, 23-5-5, therein mentioned, is as follows:

> "If any claimant shall employ an attorney to represent him in a contested claim for compensation while such claim is pending before the commissioner, the appeal board, or the supreme court of appeals, and such attorney shall file with the commissioner an attested copy of his contract of employment with such claimant, it shall be the duty of the commissioner to protect such attorney in the collection of his fees to the extent hereinafter provided; and if said contract of employment shall not violate the following schedule of fees, the commissioner shall make payment of such fee directly to such attorney out of any award or awards made to the claimant. If the claim is finally determined while pending before the commissioner and no appeal is filed therein with the appeal board the attorney fee shall not exceed two hundred dollars; if the claim is finally determined while pending before the appeal board, the attorney fee shall not exceed three hundred fifty dollars; * * *".

The defendant insists that this statute limits absolutely the attorney's fees which can be collected for legal services in a workmen's compensation proceeding, while the plaintiff takes the position that it goes no further than to fix the extent to which the fee of a claimant's attor-

ney or attorneys will be paid out of an award by the compensation commissioner. We are unable to perceive how the statute can be given the broad meaning contended for by the defendant. To do so would seriously abridge the claimant's right to contract. He would be compelled to employ only such attorneys as would choose to serve for a contingent fee, and that a very modest one. His claim may be an exceedingly difficult one, requiring arduous legal labor of high character. The claimant may be thoroughly responsible financially, and able to employ counsel for a fee certain. Claimants for compensation are not all impecunious or otherwise irresponsible. The statute in question should not be construed so as to deprive a claimant for compensation of any of the rights of ordinary citizens unless that construction is unavoidable, nor should attorneys be shorn of the privilege of extending the benefits of their profession to this class of clients at a reasonable fee unless the statute clearly admits of no other view. This statute clearly is not, by its terms, so drastic. It merely provides that upon compliance by the attorney with certain preliminaries "it shall be the duty of the commissioner to protect such attorney in the collection of his fees to the extent hereinafter provided". It does not deprive such attorney of any other protection which the general law gives him. Indeed, the statute directly implies that he does have protection from some other legal source. We therefore give the statute the exact meaning which it bears on its face, and no other.

Under the fourth point of law certified the sole question is whether, under Code, 23-4-18, money received by a claimant out of the compensation fund and deposited in bank, without being commingled with other funds, is exempt from attachment or execution or other proceeding by a creditor. The section of the Code involved is as follows:

"Except by this section provided compensation shall be paid only to such employees or their dependents, and shall be exempt from all claims of creditors and from any attachment, execution or

assignment other than compensation to counsel for legal services, under the provisions of, and subject to the limitations contained in section five, article five * * * of this chapter."

Plaintiff says that compensation money ceases to be exempt immediately upon its being paid to the claimant, or, at least, that it loses the protection of being exempt when it is deposited in bank, inasmuch as thereby the credit of the bank is, in legal effect, substituted for the actual money.

Our original workmen's compensation act was chapter 10 of the Acts of the Legislature of 1913, in section 42 of which was the following provision:

"Benefits before payment shall be exempt from all claims of creditors and from any attachment or execution and shall be paid only to or for the use of such employees or their dependents as hereinbefore provided."

It requires no judicial construction to say that the exemption under this section did not extend beyond the time of payment by the compensation commissioner to the claimant. Other states have, or at one time had, similar statutory provisions and have held that thereunder there is no exemption of the money after it reaches the hands of the claimant. *Hawthorn* v. *Davis,* (La. App.) 140 So. 56; *Arsenault* v. *LePage,* 84 N. H. 497, 152 A. 475; *Beierlein* v. *Faulkner,* 15 N. J. Mis. R. 313, 190 A. 853; *Wartella* v. *Osick,* 108 Pa. Sup. Ct. 589, 165 A. 660. But some courts have arrived at the opposite conclusion in construing substantially similar statutes. *Surace* v. *Danna,* 223 N. Y. S. 918, 161 N. E. 315; *In re Allen's Guardianship,* 182 Okla. 512, 78 P. 2d 700.

But by section 42 of chapter 131 of the Acts of the Legislature, regular session, 1919, this section of the workmen's compensation law was amended to read, in part, as follows:

"Compensation shall be paid only to or for the use of such employees or their dependents as

hereinbefore provided and shall be exempt from claims of creditors and from any attachment, execution or assignment. * * *".

A number of amendments and reenactments of this section of the statute have been made between 1919 and the time of the enactment of the present statute, in none of which amendments has the exemption been again limited, as in the Act of 1913, to "benefits before payment".

It is perfectly obvious that the legislative policy since 1919 has been to omit expressly the provision thus existing by which benefits under the compensation law were exempt from legal process only during the period "before payment". The statute now is that "compensation * * * shall be exempt from all claims of creditors and from any attachment, execution, or assignment"; except compensation to counsel for legal services under the provisions, and subject to the limitation contained in section 5, article 5 of the compensation act. Compensation is thus made exempt, with no limitation by time or event. It would seem that as long as that which is held by the beneficiary under the compensation law, or to which he is entitled, can be identified, or legally treated as, "compensation", it is exempt. This word has no legal or technical meaning. Its significance must therefore be extracted from the act in which it is used, and the word is used with reference to money both before and after its payment to a claimant. For example, section 6 of article 4 provides that "Where compensation is due an employee under the provisions of this chapter, such compensation shall be provided in the following schedule * *. *:" Thus benefits to which a claimant has shown himself entitled, but which he has not been paid, are "compensation" by the terms of the statute itself, while section 19 of article 4 provides that: "Any person who shall knowingly and with fraudulent intent secure or attempt to secure larger compensation, or compensation for a longer term than he is entitled to, * * * shall be guilty of a misdemeanor * * *". Thus money actually

received is clearly designated as "compensation". This general and comprehensive use of the word occurs frequently in the act, indicating that the term, as used therein, embraces the money awarded for injury, both before and after its payment to the claimant. In common parlance the word is universally so used. A claimant is said to have received his compensation; to have spent his compensation; to be living on his compensation, and so forth. We can see no basis in law or logic for calling money, awarded but not paid to a claimant, compensation, but treating it as something else after the payment. Indeed, such money is more logically considered compensation after it is received than before.

We consider, therefore, that money received by a claimant from the workmen's compensation fund continues to be covered by the statutory exemption after it has been received by the claimant. Otherwise, what significance has the exemption for practical purposes? It is true that the prohibiting of levy on the award while in the hands of the commissioner would prevent annoyance and inconvenience in the commissioner's office, but can we assume that this was the sole purpose for providing for the exemption? What benefit would accrue to the claimant? A creditor with a writ of *fieri facias* would have a lien on the fund the instant it came into the claimant's hands which might be enforced by the interrogatories authorized by Code, 38-5. The whole purpose of the compensation act would thus become futile. The claimant would not be supported during his incapacity. He would receive no benefits from the elaborate machinery created for that purpose. We will not so construe the statute until the legislature clearly commands us so to do. Other courts have been persuaded by the same or like considerations. *Vukovich* v. *Ossie*, 50 Ariz. 194, 70 Pa. 2d 324; *Surace* v. *Danna, supra, Martin* v. *Lamb*, 228 Mich. 396, 200 N. W. 160.

But did this compensation money lose its exemption by its being deposited in the bank? We think not. It has not been spent; it has not been invested; it has not been commingled with other funds; it has not lost its

identity. True, the money, by deposit in bank, became the property of the bank, and the depositor thereby exchanged for his money the bank's credit for a like amount. But we cannot disregard the facts of modern business practice. Money in substantial sums is not carried on one's person. The defendant had no practical way to collect his compensation except to clear his check through a bank, no reasonable or practicable method of safeguarding it except by leaving it on deposit, and no convenient or practical way of using or spending it except by availing himself of the facilities of a bank. In all probability, he never had a cent of the money in his hands in cash. It was credit to his benefit when held by the state; it was credit in the drawee bank when he received a check therefor; and it was credit in no greater degree or different character when left on deposit in the collecting bank. It must be regarded as "compensation" until its character has been changed in substantial and legal degree.

The fact that the money is on deposit in the names of his wife and children is immaterial. What signifies it to the plaintiff that the defendant has given away or otherwise transferred exempt money? If the transfer is a nullity as to the plaintiff, it would then resume its original status of being exempt from the plaintiff's claim; if it has been legally transferred, it belongs to the transferees and is, of course, beyond the plaintiff's reach.

. Accordingly, we disapprove the proposition of law asserted in the first point certified and approve the propositions made in the second, third and fourth.

*Reversed in part; affirmed in part, and remanded.*

KENNA, JUDGE, dissenting:

I dissent from the third syllabus for the reason that Sec. 18, Art. 4, Ch. 137, Acts of 1939 which provides that compensation shall be exempt from forced sale and claims of creditors increases the exemptions fixed by Sec. 48, Art. 6 of the West Virginia Constitution at one thousand dollars for a homestead and two hundred dollars per-

sonal property to be implemented by an enabling act. To my mind it is plain that a subject fully covered by a constitutional provision is, without express inhibition, thereby excluded from among the subjects with which the Legislature would otherwise clearly have power to deal. These constitutional exemptions cannot be otherwise lowered. *Donaldson* v. *Voltz,* 19 W. Va. 156; *Moran* v. *Clark,* 30 W. Va. 358, 4 S. E. 303, 8 Am. St. Rep. 66. Certainly the constitutional homestead exemption could not be increased by the Legislature. It follows that the personal property exemption cannot be so increased. That is exactly what the Court's opinion makes the section being considered provide. Furthermore, the statute under consideration does not fix a specific amount of exemption, as it would if intended for the protection of the livelihood of a class of persons, but under the Court's opinion leaves that a fluctuating question to be determined by the individual award in each compensation case regardless of need. This opens the additional question of class legislation that I shall not attempt to deal with. See note 1 A. L. R. 757.

No exemptions were provided by our Constitution of 1861-63, but the matter was left entirely to the Legislature. Prior to 1872 the Legislature attempted to deal with the subject a number of times, but at the Constitutional Convention of 1872 it was presented in various forms, generally discussed, and finally adopted. Our present provision was the result. See Journal Constitutional Convention (1872) pp. 33, 34, 46, 258, 260, 261, 264, 265, 266. This history, I believe, adds strength to the statement that the Legislature is deprived of the power to add to, or substract from, a definite and specific constitutional exemption, it being clear that the constitution did not speak until the people became convinced that the subject was fundamental and therefore not to be subjected to continual change by it.

In the light of the foregoing I am of the opinion that the construction placed by the opinion upon Sec. 18, Art. 4, Chap. 137, Acts of 1939, so that it includes as ex-

empt from process the payment of compensation after the sum paid has reached the beneficiary and become subject to his custody and control, renders that section unconstitutional to that extent. I would hold instead that the meaning of the word "compensation" as used by that section means the award while in the hands of the Commissioner and while in transit to the claimant, but does not include the sum paid after subjected to the ownership, possession, and control of the beneficiary. It would then not increase the constitutional exemption. Otherwise it would.

The provision of the Virginia Constitution dealing with homestead exemption, unlike ours, has been held to be self-executing. It is otherwise materially different, so that I do not believe the reasoning adopted in the cases of *Hatorff* v. *Wellford, Judge,* (1876) 27 Gratt. 356; *Helm* v. *Helm's Admr.,* (1878) 30 Gratt. 404; and *Virginia-Tennessee Coal and Iron Co.* v. *McClelland and wife,* (1900) 98 Va. 424, 36 S. E. 479, is to be regarded as persuasive.

Subject to this comment, I concur.