464 S.E.2d 358

**Grace Huang BARBER, Administratrix of the Estate of Charles A. Barber, Plaintiff Below, Appellee,**

v.

**Larry E. BARBER, Defendant Below, Appellee,**

**Rilda Sue Barber Call, Intervenor Below, Appellant.**

No. 22805.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 13, 1995.

Decided Oct. 16, 1995.

Gene Gardner, Gardner & Cyrus, Huntington, for Appellee, Grace Huang Barber, Administratrix.

James W. St. Clair, J. Wm. St. Clair, St. Clair & Levine, Huntington, for Appellant, Rilda Sue Barber Call.

Paul J. Prunty, Huntington, for Maude Barber Estate.

THOMAS B. MILLER, Justice: [1]

This appeal from an order of the Circuit Court of Cabell County involves the distribution of assets from the Estate of Maude Barber. Mrs. Barber had two sons, Larry Barber and Charles Barber. On October 25, 1989, Larry Barber shot and killed his brother, Charles Barber, in Huntington, West Virginia. Larry was found guilty of voluntary manslaughter and was sentenced to one to five years in the penitentiary. On November 2, 1989, Maude Barber died testate, devising her property equally to her two sons. Her estate consisted of $61,400 in real property, $3,088 in personal effects, and $36,269.10 in cash.

Charles Barber is survived by his wife, Grace Huang Barber, the plaintiff below and appellee herein, and an infant son. On November 27, 1989, Grace Barber, as administratrix of Charles Barber's estate, filed a civil action against Larry Barber, seeking monetary damages for the wrongful death of her husband. Following the criminal conviction of Larry Barber, Grace Barber moved for summary judgment on the issue of liability in the wrongful death action. She was granted summary judgment on February 21, 1991, and awarded damages "in an amount equal to Larry Barber's interest in the Estate of Maude Barber." The administratrix c.t.a. of Maude Barber's estate was not made a party to the action, and the circuit court withheld distribution of Maude Barber's estate assets until Larry Barber's criminal appeal was finalized.[2] Charles Barber's estate obtained and filed an abstract of judgment against

---

1.  Pursuant to an Administrative Order entered by this Court on September 11, 1995, retired Justice Thomas B. Miller was recalled for the September 1995 term because of the retirement of Justice W.T. Brotherton, Jr.

2.  Larry Barber's appeal was finalized on May 29, 1992, when this Court issued its opinion affirming the conviction in *State v. Barber,* 187 W.Va. 360, 419 S.E.2d 300 (1992).

Larry Barber's interest in Maude Barber's estate.

Thereafter, on July 22, 1992, Larry Barber's ex-wife, the intervenor below and one of the appellants herein, Rilda Sue Barber Call, was awarded a judgment against Larry Barber for delinquent child support in the amount of $32,204. Larry Barber failed to pay any court-ordered child support after he and Ms. Call were divorced in 1981. Ms. Call obtained a writ of execution, which was delivered to the sheriff on September 16, 1992. Ms. Call also requested and received a summons and suggestion on Maude Barber's estate, which was served upon the administrator c.t.a. on September 22, 1992. No other writ or suggestion was filed against Larry Barber's interest in his mother's estate.

The administrator of Maude Barber's estate refused to disburse the assets of the estate until a determination was made as to the priority of the two judgments against Larry Barber's interest. Grace Huang Barber, as administratrix of the Estate of Charles Barber, then moved the circuit court for an order requiring distribution pursuant to the prior court order entered in February, 1991. Rilda Sue Barber Call, the former wife of Larry Barber, as well as the Sheriff of Cabell County, who is the administrator c.t.a. of the Estate of Maude Barber, were granted leave to intervene in this action.

On December 2, 1994, the circuit court, after hearing from the various parties, reaffirmed and clarified its prior order, stating:

"The Court finds that the Order of 21 February 1991 clearly awarded one-half of Maude Barber's estate to the plaintiff as damages in the wrongful death action.... To the extent the 21 February 1991 Order does not clearly and accurately reflect the Court's ruling that the plaintiff was entitled to and therefore awarded Larry Barber's share of Maude Barber's estate, it is a clerical error and, pursuant to Rule 60(a)

of the West Virginia Rules of Civil Procedure, is hereby amended *nunc pro tunc* [.]" The administrator of Maude Barber's estate was ordered to distribute Larry Barber's share to Grace Huang Barber. It is from this order that the appellant, Rilda Sue Barber Call, appeals.

### I.

■ We initially note the parties concede the judgment obtained by Grace Huang Barber, as administratrix of the Estate of Charles Barber, on February 21, 1991, by virtue of W.Va.Code, 38-3-6 (1923), is a lien on all real estate inherited by Larry Barber.[3] Because the Charles Barber Estate obtained its judgment prior to that of Rilda Sue Barber Call, it has priority over her judgment lien as to the real estate owned by Maude Barber. *See Guaranty National Bank v. State Motor Sales, Inc.,* 150 W.Va. 521, 147 S.E.2d 495 (1966); *Foley v. Ruley,* 50 W.Va. 158, 40 S.E. 382 (1901).

As to the personal assets of the estate given to Larry Barber, the appellant argues the circuit court failed to recognize that her writ of execution and suggestion on her judgment gave her a priority lien on the distribution of such assets from Maude Barber's estate. She contends the circuit court, in its February, 1991 order, gave Grace Huang Barber a judgment equal to Larry Barber's interest in his mother's estate, but she did nothing further to establish a lien on the judgment as against this personal property. We agree and find the actions undertaken by Rilda Sue Barber Call were correct steps to perfect the proper liens on the judgment obtained for back child support.

■ Ms. Call began to perfect her judgment lien against Larry Barber's interest in the personal property by delivering to the sheriff a writ of execution on September 15, 1992. The judgment obtained was for money owed for back child support. Where a judg-

---

**3.** W.Va.Code, 38-3-6, states, in pertinent part:

"Every judgment for money shall be a lien on all the real estate of or to which the defendant in such judgment is or becomes possessed or entitled, at or after the date of such judgment, or if it was rendered in court, at or after the commencement of the term at which it was

so rendered, if the cause was in such condition that a judgment might have been rendered on the first day of the term[.]"

W.Va.Code, 38-3-7 (1923), provides an exception to the foregoing section requiring the docketing of the judgment in the office of the clerk of the county commission in order to make the judgment lien valid against bona fide purchasers.

ment is obtained for money owed under W.Va.Code, 38–4–5, the execution issued on it is known as a writ of *fieri facias*.[4] Under W.Va.Code, 38–4–8, this became a lien upon the personal property, or the estate or interest therein, owned by the judgment debtor at the time the writ was delivered to the sheriff.[5]

█ Moreover, Ms. Call caused a suggestion to be issued on the Estate of Maude Barber since there had been no distribution of the personal property. Under W.Va.Code, 38–5–10, a suggestion is available to a judgment creditor where some person is indebted or liable to the judgment debtor or has in his possession or under his control personal property belonging to the judgment debtor.[6] It is clear from the record and the foregoing discussion that Grace Huang Barber did not follow these statutory procedures to perfect her judgment against the personal property of Larry Barber held in the Estate of Maude Barber. Consequently, Ms. Call had the only lien against the personal property.

## II.

█ The circuit court directed that Larry Barber's share of the personal property be given to the Grace Huang Barber by making the language in the December 2, 1994 order operate *nunc pro tunc* to the February 21, 1991 order.[7] The Court reasoned this was done because there was a clerical error made in the February, 1991, order, which was being corrected under Rule 60(a) of the W.Va. Rules of Civil Procedure.[8]

█ We address first the *nunc pro tunc* aspect of the December 2, 1994, order. In *Robinson v. McKinney,* 189 W.Va. 459, 432 S.E.2d 543 (1993), we outlined the requisites for a *nunc pro tunc* order in the context of a divorce case. There, the original order awarded custody of the child to the mother, along with child support. A subsequent order was entered in December, 1977, granting custody of the child to the father, but there was no mention made of child support. Thereafter, by mutual agreement, the mother was given custody, but no order was entered approving this change in custody. The ex-husband refused to pay child support, and the mother then filed for child support during the period she had the child. The father requested that a *nunc pro tunc* order be

4. W.Va.Code, 38–4–5, states: "On a judgment for money, there may be issued an execution known as a writ of ficri facias."

5. The relevant text of W.Va.Code, 38–4–8, is: "A writ of fieri facias or execution shall create a lien, from the time it is delivered to the sheriff or other officer to be executed, upon all of the personal property, or the estate or interest therein, owned by the judgment debtor at the time of such delivery of the writ, or which he may acquire on or before the return day thereof[.]"

6. The material portion of W.Va.Code, 38–5–10, is: "Upon a suggestion by the judgment creditor that some person is indebted or liable to the judgment debtor or has in his possession or under his control personal property belonging to the judgment debtor, which debt or liability could be enforced, when due, or which property could be recovered, when it became returnable, by the judgment debtor in a law court, and which debt or liability or property is subject to the judgment creditor's writ of fieri facias, a summons against such person may be sued out of the office of the clerk of the circuit court of the county in which such person so indebted or liable, or so having such personal property, resides[.]"

7. The precise language of December 2, 1994, order on this point is:

"The Court finds that the Order of 21 February 1991 clearly awarded one-half of Maude Barber's estate to the plaintiff as damages in the wrongful death action.... To the extent the 21 February 1991 Order does not clearly and accurately reflect the Court's ruling that the plaintiff was entitled to and therefore awarded Larry Barber's share of Maude Barber's estate, it is a clerical error and, pursuant to Rule 60(a) of the West Virginia Rules of Civil Procedure, is hereby amended *nunc pro tunc* [.]"

8. Rule 60(a) of the Rules of Civil Procedure states:

"*Clerical mistakes.*—Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders. During the pendency of an appeal, such mistakes may be so corrected before the appeal is docketed in the appellate court, and thereafter while the appeal is pending may be so corrected with leave of the appellate court."

entered correcting the December, 1977, order to state that child support by the father be terminated. In holding that the circuit court was correct in refusing to enter a *nunc pro tunc* order, we said:

> "Furthermore, in syllabus point 3 of *State ex rel. Palumbo v. County Court of Kanawha County*, 151 W.Va. 61, 150 S.E.2d 887 (1966), we stated '[a] nunc pro tunc order must be based on some memorandum on the records relating back to the time it is to be effective and such order cannot be entered if the rights of the parties may be adversely affected thereby.' In the case before us, there was no memorandum on the records which indicated that child support was to be addressed in the December, 1977 order. Also, the rights of the mother would be adversely affected by the entry of a *nunc pro tunc* order." 189 W.Va. at 465, 432 S.E.2d at 549.

In this case, the 1991 order which granted judgment in favor of Grace Huang Barber was for an amount equal to Larry Barber's interest in his mother's estate. It did not order distribution of the estate and could not have, simply because the mother's estate was not a party to the wrongful death action. Clearly, the lien statutes discussed above were not utilized by Grace Huang Barber as a judgment creditor. Indeed, we are not cited nor are we aware of any authority for a court which is asked to render a monetary judgment to impose a lien status upon the personal property of the judgment debtor without utilizing the statutory lien procedures.

Moreover, there was no existing memorandum on the record at the time the 1991 order was entered that would authorize this alteration in the 1994 order. Finally, it is apparent that giving effect to the 1994 *nunc pro tunc* order would adversely harm Rilda Sue Call, since it would deprive her of her lien on Larry Barber's personal property in the Maude Barber Estate.

Although *Robinson v. McKinney, supra*, also addressed the question of clerical mistakes under Rule 60(a), it did not attempt any analysis of the rule, except to say that its "use of the term 'may' ... indicates that the court's authority to correct errors is discretionary." 189 W.Va. at 465, 432 S.E.2d at 549. Recently, we discussed the elements of Rule 60(a) claims in *Johnson v. Nedeff*, 192 W.Va. 260, 452 S.E.2d 63 (1994), where we summarized in Syllabus Point 3:

> "Rule 60(a) of the West Virginia Rules of Civil Procedure applies to clerical errors made through oversight or omission which are part of the record and is not intended to adversely affect the rights of the parties or alter the substance of the order, judgment or record beyond what was intended."

The problem in *Robinson, supra*, occurred when the plaintiff's counsel used the address for the circuit clerk's office that he obtained some five months earlier in a case which he had filed. The address had been changed and, as a result, the complaint was not received until the two-year statute of limitations had expired. We concluded that the fact a wrong address had been given was not an error or omission in a judgment, order, or other part of the record as required under Rule 60(a).

In *Johnson v. Nedeff, supra*, we also discussed our earlier clerical error cases arising under W.Va.Code, 58–2–5 (1923),[9] the forerunner to Rule 60(a), and quoted this language from *Stephenson v. Ashburn*, 137 W.Va. 141, 146, 70 S.E.2d 585, 588 (1952):

> "A clerical error is defined in 14 C.J.S., page 1202, as follows: 'An error committed

---

9. W.Va.Code, 58–2–5 (1966), states, in pertinent part:

"A court in which is rendered a judgment or decree in a cause wherein there is in a declaration or pleading, or in the record of the judgment or decree, any mistake, miscalculation, or misrecital of any name, sum, quantity or time, when the same is right in any part of the record or proceedings, or when there is any verdict, report of a commissioner, bond, or other writing, whereby such judgment or decree may be safely amended, ... or on a verdict in an action for more damages than are mentioned in the declaration, may, or, in the vacation of the court in which any such judgment or decree is rendered, the judge thereof may, on motion of any party, amend such judgment or decree according to the truth and justice of the case[.]"

in the performance of clerical work, no matter by whom committed; more specifically, a mistake in copying or writing; a mistake which naturally excludes any idea that its insertion was made in the exercise of any judgment or discretion, or in pursuance of any determination; an error made by a clerk in transcribing, or otherwise, which must be apparent on the face of the record, and capable of being corrected by reference to the record only[.]' " *Johnson,* 192 W.Va. at 265, 452 S.E.2d at 68.

■ Moreover, as observed in *Johnson, supra,* Rule 60(a) of the Federal Rules of Procedure, which is identical to our Rule 60(a), carries the same general requirement that the mistake must appear from the record.[10] There is a basic similarity between a *nunc pro tunc* order and a Rule 60(a) motion to correct for clerical error. Both require that what is desired to be corrected must find its genesis in the record. Here, as we earlier pointed out, the problem is the absence of any record to support the 1994 *nunc pro tunc* change. Additionally, there is the legal point that such a change could not establish a lien on personal property, which could only be done by following the statutory requirements for obtaining an execution and then a suggestion against the Estate of Maude Barber.

### III.

For the foregoing reasons, the December 1, 1994, order of the Circuit Court of Cabell County is reversed.

Reversed.

ALBRIGHT, J., did not participate.

---

**10.** *Johnson v. Nedeff,* 192 W.Va. at 265, 452 S.E.2d at 68, quoted from 11 Charles A. Wright and Arthur. R. Miller, Federal Practice and Procedure § 2854 at 149 (1973), as follows:

"Subdivision (a) deals solely with the correction of errors that properly may be described as clerical or as arising from oversight or omission. Errors of a more substantial nature are to be corrected by a motion under Rules 59(e) or 60(b). Thus a motion under Rule 60(a) can only be used to make the judgment or record speak the truth and cannot be used to make it say something other than what originally was pronounced."