556 S.E.2d 807

**Kathy FELICIANO, Plaintiff Below, Appellant**

v.

**James Garland McCLUNG, Defendant Below, Appellee.**

No. 29639.

Supreme Court of Appeals of West Virginia.

Submitted Oct. 23, 2001.

Decided Nov. 21, 2001.

Concurring Opinion of Justice Maynard Dec. 4, 2001.

 

William D. Turner, Crandall, Pyles, Haviland & Turner, Lewisburg, for Appellant.

J. Steven Hunter, Steven Hunter Associates, Lewisburg, for Appellee.

## PER CURIAM:

Appellant Kathy Feliciano, the recipient of a large jury verdict rendered against appellee James McClung, attempted to gain possession of $50,000 that appellee McClung had placed in a bank certificate of deposit. The lower court found that, because the funds had originated from a workers' compensation award, Ms. Feliciano could not reach them. Because we find that the investing of the money in a certificate of deposit stripped the money of its protected status, we reverse.

## I.

## BACKGROUND

On March 22, 1993, appellee James Garland McClung fired a 410 gauge shotgun into the abdomen of appellant Kathy Feliciano. Ms. Feliciano did not die, but sustained serious and permanent injuries. While the parties dispute the events leading up to the shooting, Mr. McClung eventually entered a so-called "*Kennedy*" plea of guilty to the felony of malicious assault.[1] Mr. McClung received a sentence of one to five years in the penitentiary. The briefs in the case reveal that he has since received parole.

But this case is not before us on any question of guilt or innocence. Ms. Feliciano filed a civil suit for damages against Mr. Garland for the injuries she sustained in the shooting. After a trial, the jury returned a verdict of $939,450 in favor of Ms. Feliciano. Mr. Garland appealed the verdict, but this Court refused his petition for appeal on June 24, 1997.

At the time of the jury verdict, Mr. McClung apparently had scant resources with which to pay Ms. Feliciano. However, sometime after the trial, the West Virginia Workers' Compensation Division granted Mr. McClung an award for his permanent and total disability.[2] In addition to monthly payments in an unknown amount, Mr. McClung won an award of back pay of approximately $90,000. Of this amount, Mr. McClung gave approximately $30,000 to his emancipated children, put $50,000 into an interest bearing certificate of deposit ("CD") at a Summersville bank, and spent the remainder.

Ms. Feliciano attempted to recover the $50,000 in the CD and obtained a Writ of Execution on June 22, 1999. With this Writ, she obtained a Suggestion, which was served upon the Community Trust Bank in Summersville. As a result, the bank liquidated the CD, and the money, plus some interest, now rests in the hands of the Circuit Clerk of Greenbrier County in an interest bearing account.

The lower court determined that the law will not permit Ms. Feliciano to recover the funds in question because they came from a workers' compensation award, but the judge allowed the funds to stay in the possession of the circuit clerk, pending this appeal.

Because we find that Mr. McClung's placement of the funds in an interest bearing certificate of deposit constituted an investment that effectively stripped the funds of their character as workers' compensation benefits, we reverse.

## II.

## STANDARD OF REVIEW

■ With this limited issue on appeal, our standard of review is clear: "Where the issue

---

1. Mr. McClung claimed that the gun went off accidentally, but nonetheless he found it in his interest to enter a so-called *Kennedy* plea of guilty. "An accused may voluntarily, knowingly and understandingly consent to the imposition of a prison sentence even though he is unwilling to admit participation in the crime, if he intelligently concludes that his interests require a guilty plea and the record supports the conclusion that a jury could convict him." Syl. Pt. 1, *Kennedy v. Frazier*, 178 W.Va. 10, 357 S.E.2d 43 (1987).

2. The record reveals neither the nature of Mr. McClung's disability, nor precisely when he won his award.

on appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syl. pt 1, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995).

## III.

## DISCUSSION

■ This case hinges upon the degree of protection W. Va.Code § 23–4–18 (2001) provides a judgment debtor who has received a benefit award from workers' compensation. Mr. McClung argues that the statute prevents any party from reaching the money he received in his award, and that there is a strong public policy interest in protecting the proceeds of such awards from creditors. Ms. Feliciano argues that the public policy of compensating tort victims should trump the public policy of preserving awards, or in the alternative, that Mr. McClung has changed the nature of the funds by investing them, such that they should no longer receive the protection of the statute. The statute reads, in pertinent part:

> Except as provided by this section, *compensation shall be paid only to such employees or their dependents, and shall be exempt from all claims of creditors and from any attachment, execution or assignment* other than compensation to counsel for legal services, under the provisions of, and subject to the limitations contained in section sixteen, article five of this chapter, and other than for the enforcement of orders for child or spousal support entered pursuant to the provisions of chapter forty-eight of this code. . . .

W. Va.Code § 23–4–18 (2001) (emphasis added).[3]

■ The basis for this protection is that the purpose of the Workers' Compensation Act is, as the name implies, to compensate workers. "The obvious purpose of the Legislature in enacting into law the so-called 'Workmen's Compensation Act' must be borne in mind in a decision of the question involved here." *McVey v. Chesapeake & Po-*

*tomac Telephone Co.*, 103 W.Va. 519, 522–3, 138 S.E. 97, 98 (1927). The intent of the law allowing permanent total disability awards is to provide support for injured employees and their families when some misfortune renders them unable to work. The intent of the protections of W. Va.Code § 23–4–18 (2001) is to see that the injured employee in need of support actually receives it.

We note that the law contains many safe harbors where the recipients of certain kinds of income may find shelter from ordinary collection efforts:

> The law of the State of West Virginia is replete with exemptions potentially applicable to judgment debtors. The general exemption provision found in *W. Va. Const.* art. VI, § 48 provides for a homestead and a personal property exemption. Salary, or wages being suggested may be exempted under Chapter 38, Articles 5 and 5A. In addition, a judgment debtor may petition the circuit court to alter the suggestee execution on the grounds of undue hardship to him or to his family. *W. Va.Code* 46A–2–130 [1974]. Our law at this time also exempts unemployment benefits, *W. Va.Code* 21A–10–2 [1982], workers' compensation benefits, *W. Va.Code* 23–4–18 [1976], welfare benefits, *W. Va.Code* 9–5–1 [1970], unripe crops *W. Va.Code* 38–8–14 [1923], money paid by a fraternal benefit society or lodge, *W. Va.Code* 33–23–21 [1957], life insurance proceeds, *W. Va.Code* 33–6–27 (1957) and 33–6–28 [1957], judicial retirement benefits *W. Va.Code* 51–9–4 [1957], public employee retirement benefits, *W. Va.Code* 5–10–46 [1957] and teacher retirement benefits *W. Va.Code* 18–7A–30 [1941].

> Furthermore, federal law currently exempts (among other items) social security benefits from execution, levy, attachment, or garnishment, 42 U.S.C.A. § 407 [1974], supplemental security income benefits 42 U.S.C.A. § 1383 [1982], veteran benefits 38 U.S.C.A. § 3101 [1982], and seamen's wages 46 U.S.C.A. § 11109 [1983].

**3.** The amendments of 2001 made minor, technical changes to the code section that do not bear upon the outcome of this case.

*Vanscoy v. Neal,* 174 W.Va. 53, 57, 322 S.E.2d 37, 41 (1984).

The thrust of all of these exceptions is that court and legislators have found a substantial public purpose in compensating certain people for certain reasons, and that allowing creditors untrammeled access to these funds would thwart the intended policies. As we noted in a case dealing with "undue hardship" for debtors:

> [T]he court in dealing with the purposes underlying the poor debtor's exemption currently embodied in W. Va.Code § 38-8-1 (Cum.Supp.1978) stated that the object of the exemption was "... for the protection and benefit of a poor debtor and his helpless family, to give them the bread of life and a pillow whereon to lay their head, to save them from destitution and absolute want." *Id.* at 162–63, 35 S.E. at 993.

*Cottrell v. Public Finance Corporation,* 163 W.Va. 310, 316 n. 8, 256 S.E.2d 575, 580 n. 8 (1979) (quoting, *State v. Allen,* 48 W.Va. 154, 162–63, 35 S.E. 990. 993 (1900)). *Accord, Miller v. Barron,* 177 W.Va. 292, 352 S.E.2d 41 (1986); *ACF Industries, Inc. v. Credithrift of America, Inc.,* 173 W.Va. 83, 312 S.E.2d 746 (1984).

Nonetheless, our case law has established that the beneficiary of a workers' compensation award could conceivably lose the protection afforded by W. Va.Code § 23-4-18 (2001). In the case of *Billingslea v. Tartell,* 127 W.Va. 750, 35 S.E.2d 89 (1945), a lawyer who assisted an injured worker in winning a workers' compensation award sought payment for his efforts out of the funds awarded. The defendant had placed the funds in a bank account, and the lawyer argued, in part, that the funds should be released because the act of placing them in the bank had changed the character of the funds, stripping them of the statute's protection. The Court disagreed, and explained:

> But did this compensation money lose its exemption by its being deposited in the bank? We think not. It has not been spent; it has not been invested; it has not been commingled with other funds; it has not lost its identity. True, the money, by deposit in bank, became the property of the bank, and the depositor thereby ex-

changed for his money the bank's credit for a like amount. But we cannot disregard the facts of modern business practice. Money in substantial sums is not carried on one's person. The defendant had no practical way to collect his compensation except to clear his check through a bank, no reasonable or practicable method of safeguarding it except by leaving it on deposit, and no convenient or practical way of using or spending it except by availing himself of the facilities of a bank. In all probability, he never had a cent of the money in his hands in cash. It was credit to his benefit when held by the state; it was credit in the drawee bank when he received a check therefor; and it was credit in no greater degree or different character when left on deposit in the collecting bank. It must be regarded as "compensation" until its character has been changed in substantial and legal degree.

*Billingslea v. Tartell,* 127 W.Va. 750, 759–60, 35 S.E.2d 89, 94 (1945). The Court in *Billingslea* focused on whether or not the money had lost its character as compensation. "It has not been spent; it has not been invested; it has not been commingled with other funds; it has not lost its identity." *Id.* In our view, the crucial distinction is that the character of the money had not changed in some way inconsistent with the award's original purpose, *i.e.* the support of the injured worker. Like the Court in *Billingslea,* we feel that investing the money from an award is at odds with the supposed need for support, which is the basis for the statutory protection from creditors.

In the instant case, Mr. McClung argues that the funds were not "invested" by being exchanged for a certificate of deposit. He maintains that the CD is essentially a bank account, and that the logic of *Billingslea* and the protections of the statute should still provide him a safe harbor. We disagree.

We acknowledge that the distinction between a bank account and "an investment" is exceedingly fine in this case; we do not wish to create a trap for the unwary, nor do we wish to invite a blizzard of briefs in which attorneys for creditors argue the subtle differences that may exist between different

types of bank accounts. However, by their nature, cases such as this require some degree of fact specific analysis. In the instant case, Mr. McClung, who has no dependents and continues to receive a periodic payment from the Workers' Compensation Division, and who has evidenced no intent to compensate Ms. Feliciano in any fashion from any source, took the proceeds from his award and exchanged them for a certificate of deposit. We have difficulty characterizing the certificate of deposit as anything other than an "investment."

■ Thus, under the circumstances of the present case, we feel that a certificate of deposit is an investment, and once Mr. McClung invested the proceeds of his award in such a fashion, the protections of W. Va. Code § 23–4–18 (2001) no longer apply to those funds. As we have held previously: "Under W. Va.Code, 38–5–10 (1923), a suggestion is available to a judgment creditor where some person is indebted or liable to the judgment debtor or has in his possession or under his control personal property belonging to the judgment debtor." Syl. pt. 2, *Barber v. Barber,* 195 W.Va. 38, 464 S.E.2d 358 (1995).[4]

Accordingly, we find that the funds ($50,000, plus interest) now in the hands of the Circuit Clerk of Greenbrier County do not enjoy any protection under W. Va.Code § 23–4–18 (2001), and are subject to standard collection practices under W. Va.Code § 38–5–10 (1995), or any other applicable section.

### IV.

### CONCLUSION

For the reasons stated, the judgment of the Circuit Court of Greenbrier County is reversed and remanded for further proceedings consistent with this opinion.

Reversed and remanded.

Justice MAYNARD concur, and files concurring opinion, joined by Justice DAVIS.

MAYNARD, Justice, concurring.

(Filed Dec. 4, 2001)

I concur with the result reached in this case. However, I would hold that the appellee's workers' compensation funds are not exempt from Ms. Feliciano's claim, regardless of what form the funds are now in, based on the fact that the appellee committed an *intentional* tort against Ms. Feliciano.

Even though W.Va.Code § 23–4–18 (2001) provides that compensation paid to employees or their dependents "shall be exempt from all claims of creditors and from any attachment, execution or assignment," there are important public policy considerations that override this exemption. For example, the Legislature excepted from this exemption enforcement of orders for child support or spousal support. Obviously, in crafting this code section, the Legislature found the financial support of children and spouses to be of greater importance than the guarantee that an injured employee in need of support receive his or her entire compensation award. Likewise, I would provide an exception to W.Va.Code § 23–4–18, where the beneficiary of a workers' compensation award committed an intentional act which resulted in harm to another person.

The facts in this case show that the appellee fired a shotgun into Ms. Feliciano's abdomen, causing her to sustain serious and permanent injuries. As a result, a jury returned a verdict of $939,450 in favor of Ms. Feliciano. I am unable to believe that the Legislature intended to shield the appellee from

---

4. That code section provides in pertinent part:
   (a) Upon a suggestion by the judgment creditor that a person is indebted or liable to the judgment debtor or has in the person's possession or control personal property belonging to the judgment debtor, which debt or liability could be enforced, when due, or which property could be recovered, when it became returnable, by the judgment debtor in a court of law, and which debt or liability or property is subject to the judgment creditor's writ of fieri facias, a summons against such person may be issued out of the office of the clerk of the circuit court or of the magistrate court of the county in which the judgment creditor obtained the writ of fieri facias, requiring such person to answer the suggestion in writing and under oath. . . .
   W. Va.Code § 38–5–10 (1995).

judgment under these circumstances. Certainly, it was not the intent of the Legislature in enacting W.Va.Code § 23-4-18, to protect from judgment an intentional tortfeasor like the appellee, while leaving an innocent victim like Ms. Feliciano with absolutely no legal recourse to receive needed and deserved compensation.

Even if the appellee had his workers' compensation check in his back pocket or in his piggy bank at home, I would hold that it is not exempt from Ms. Feliciano's claim. The time-honored principles that innocent victims of wrongdoers should be compensated for their injuries and intentional tortfeasors should have to pay for the harm they have caused combine, in this case, to mandate the result reached by the majority regardless of what the appellee did with his compensation check after he received it.

Accordingly, I concur with the majority decision in this case. Also, I am authorized to state that Justice DAVIS joins me in this concurrence.