No. 74,531

E.W., as Natural Guardian and next friend of J.R.W., a minor,
*Appellee,* v. Jimmy Dean Hall, *Appellant.*

(917 P.2d 854)

Opinion filed May 31, 1996.

*Philip J. Bernhart,* of Coffeyville, argued the cause and was on the brief for appellant.

*Frederick R. Smith,* of Pittsburg, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

McFarland, C.J.: The single issue in this case is whether the district court erred in allowing the plaintiff, a judgment creditor, to attach/garnish a savings account and certificate of deposit owned by defendant. Defendant contends that the bulk of the funds are social security benefits awarded retroactively and are exempt under federal law.

The facts may be summarized as follows. In December 1991, J.R.W. resided with her mother, siblings, and defendant, Jimmy Dean Hall. Defendant severely injured the child by tearing her vagina with his finger. Defendant was charged with, and pled nolo contendere to, the crime of rape. He has been an inmate in the Kansas prison system at all pertinent subsequent times, serving a 15-year to life sentence.

On December 15, 1993, the present action was filed seeking damages for the child's injuries. Simultaneously, a petition was filed seeking prejudgment attachment of funds belonging to defendant which were being held in a bank. Pursuant to K.S.A. 60-706, the

order of attachment was issued, directing the bank to reply as garnishee. The bank replied that it held the following funds belonging to defendant:

| | |
|---|---|
| Certificate of deposit | $19,772.16 |
| Savings account | 4,364.35 |
| Total | $24,136.51 |

Defendant filed an affidavit asserting "[t]hat all monies except for institutional pay of nine dollars per month are monies received as social security benefits" retroactively awarded. The district court held the funds were not exempt. Subsequently, the plaintiff was awarded a judgment against defendant in the amount of $23,156.54. Defendant was given credit for $2,156.54 restitution previously paid, which left a judgment of $21,000 plus costs and judgment interest. There is no issue before us challenging the personal injury judgment or the attachment garnishment procedure itself. The issue is whether the monies defendant received from social security are exempt.

Resolution of the issue depends upon interpretation of 42 U.S.C. §§ 407 and 659 (1994). Interpretation of a statute is a question of law over which this court has unlimited review. See *Mariche v. Mariche*, 243 Kan. 547, 552, 758 P.2d 745 (1988); *Gillespie v. Seymour*, 250 Kan. 123, 129, 823 P.2d 782 (1991).

Defendant argues that the district court erred in deciding that an implied exception to the statutory exemption allows attachment of these social security funds. Plaintiff contends that public policy compels an interpretation of the federal statutes to allow this attachment.

A concise summary and history of the relevant federal statutes can be found in *Mariche*, 243 Kan. 547. There, we considered whether the district court erred in finding that the defendant's social security disability benefits were not exempt from garnishment to pay past-due child support under K.S.A. 60-2308(a). We first noted that the issue was governed by the federal statutes pertaining to social security benefits, specifically 42 U.S.C. § 407 and § 659. In reaching the conclusion that Mariche's benefits were not

exempt, we set out the following history of the federal statutes, still applicable today:

"Prior to 1975, 42 U.S.C. § 407 (1970) provided that social security payments of all types were not transferable or assignable or subject to execution, levy, attachment, garnishment, or other legal process:

> 'The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law.'

"Aware of the importance of the right of a spouse and children to receive support from an absent parent, Congress in 1975 enacted § 459 of the Social Security Act (42 U.S.C. § 659 [1982] ), which waived the sovereign immunity previously enjoyed by the United States and specified that wages of government employees and also social security benefits are subject to garnishment in child support and alimony cases. A 1983 amendment to 42 U.S.C. § 407 included a provision that no other law enacted before, on, or after a certain date could be construed to limit, supersede, or otherwise modify the provisions of § 407 except to the extent it does so by express reference to that section. 42 U.S.C. § 407 (Supp. III 1985). Currently, 42 U.S.C. § 659 (Supp. III 1985) provides:

> 'Notwithstanding any other provision of law, *(including section 407 of this title)* effective January 1, 1975, moneys (the entitlement to which is based upon *remuneration for employment*) due from, or payable by, the United States or the District of Columbia (including any agency, subdivision, or instrumentality thereof) to any individual, including members of the armed services, shall be subject, in like manner and to the same extent as if the United States or the District of Columbia were a private person, to legal process brought for the enforcement, against such individual of his legal obligations to provide child support or make alimony payments.' (Emphasis supplied.)

"42 U.S.C. § 662(f) (Supp. III 1985) defines 'remuneration for employment' to include 'periodic benefits . . . or other payments to such individual under the insurance system *established by subchapter II of this chapter.*' (Emphasis supplied.) 42 U.S.C. § 423 (1982 and Supp. III 1985) provides for social security disability benefits and is included in subchapter II of the Social Security Act. Thus, under the federal statutes, the garnishment of social security disability benefits is authorized in order to permit recovery of past due child support or alimony payments. The Code of Federal Regulations (5 C.F.R. § 581.103 *et seq.* [1988]) interprets the federal statutes to authorize the garnishment of federal disability payments to pay child support and alimony payments." 243 Kan. at 548-49.

The language in these federal statutes is unchanged. See 42 U.S.C. §§ 407, 659 (1994).

In another Kansas case, *Younger v. Mitchell*, 245 Kan. 204, 777 P.2d 789 (1989), this court considered whether a judgment creditor could garnish Mitchell's bank accounts which contained his veteran's administration (VA) benefits and his social security disability benefits, as well as his wife's social security disability benefits. The trial court held that Mitchell's VA benefits were not exempt, that his wife's social security disability benefits were not subject to garnishment for Mitchell's debt, that Mitchell's social security benefits were exempt from garnishment, and that any carryover amounts were not exempt pursuant to K.S.A. 60-2308(a). 245 Kan. at 205-06.

Addressing the merits of Mitchell's appeal, we first noted that, *although not properly before the court*, the trial court was correct in finding that the social security benefits were exempt pursuant to 42 U.S.C. § 407(a). 245 Kan. at 209-10. Although the facts vary slightly, the case before the court here asks basically the same question as was before this court in the dicta portion of *Mitchell*. The court also held the VA benefits were exempt.

The United States Supreme Court has addressed these statutes at least twice: *Philpott v. Essex County Welfare Board*, 409 U.S. 413, 34 L. Ed. 2d 608, 93 S. Ct. 590 (1973), and *Bennett v. Arkansas*, 485 U.S. 395, 99 L. Ed. 2d 455, 108 S. Ct. 1204 (1988). Lower federal appellate courts have also interpreted these statutes.

In *Philpott*, the welfare board sued its welfare recipient and his trustee to reach a bank account in which the recipient's trustee had deposited a check for 6 months' retroactive social security disability benefits. The state Supreme Court allowed the attachment based upon an agreement executed by the recipient with the welfare board. In this agreement, signed at the time of application for welfare, the recipient agreed to reimburse the welfare board for all payments received. The United States Supreme Court reversed, disallowing the attachment. 409 U.S. at 417.

In reaching its decision, the Court interpreted 42 U.S.C. § 407, stating:

"On its face, the Social Security Act in § 407 bars the State of New Jersey from reaching the federal disability payments paid to [the recipient]. The language is all-inclusive: '[N]one of the moneys paid or payable . . . under this subchapter

shall be subject to execution, levy, attachment, garnishment, or other legal process . . . .' The moneys paid as retroactive benefits were 'moneys paid . . . under this subchapter'; and the suit brought was an attempt to subject the money to 'levy, attachment . . . or other legal process.' " 409 U.S. at 415-16.

Although the welfare board argued that there was an implied exception to the § 407 exemption in that the state welfare benefits could have been reduced by the amount of the federal grant had the social security payments been received monthly, the Court refused to find such an implied exception. The Court found that "the funds on deposit were readily withdrawable and retained the quality of 'moneys' within the purview of § 407 . . . [The statute] imposes a broad bar against the use of any legal process to reach all social security benefits. That is broad enough to include all claimants, including a State." 409 U.S. at 417.

As previously noted, since the *Philpott* decision the Social Security Act has been amended to allow attachment of social security funds in order to pay past-due child support and alimony. *Mariche*, 243 Kan. at 549.

In 1980, an implied exception to the bar against attachment was created by *Department of Health, etc. v. Davis*, 616 F.2d 828 (5th Cir. 1980). There, the recipient was incompetent and unable to care for himself to any degree; all his needs, during the period of time he was in the state hospital, were met by the State. Under these facts, the *Davis* court distinguished *Philpott* and held that the State could reach the funds held by the recipient's guardian. The court justified its decision by noting that the purpose of social security benefits for the disabled is to provide for their care and maintenance. Further, the purpose of the exemption is to protect social security beneficiaries from creditors' claims. Because neither the purpose of the benefits nor the purpose of the exemption was being accomplished by barring the State from reimbursement, the collection was allowed. 616 F.2d at 829-31.

The social security benefits' statutory exemption was addressed more recently in *Bennett*, 485 U.S. 395. There, a state statute authorized the State to seize a prisoner's property or estate, including social security benefits, in order to defray the cost of maintaining

the state's prison system. The state Supreme Court upheld an attachment of social security funds, believing that the federal statutory exemption from legal process was subject to an implied exception when the State provided for the care and maintenance of a social security beneficiary. The United States Supreme Court rejected this reasoning and held that a State was not permitted to seize the prisoner's social security benefits. The Court also held that the state statute conflicted with the federal statute and, under the Supremacy Clause of the United States Constitution, the state statute must give way. 485 U.S. at 397-98.

The Court rejected the distinction, made in *Davis*, that because the State paid all of the recipient's care rather than just a part of his care, as was the case in *Philpott*, an implied exception to the § 407 exemption had been created. "[W]e do not think that such a distinction carries the day given the express language of § 407(a) and the clear intent of Congress that Social Security benefits not be attachable." 485 U.S. at 398.

Thus, under 42 U.S.C. § 407 and § 659, social security disability benefits are exempt from attachment except in cases were the attachment is ordered to pay past-due child support or alimony.

The plaintiff argues that public policy should permit her to reach the funds. Defendant's needs are being met by the prison system, and he has no family to support. If we were free to decide the case on public policy or equitable consideration, there could be no strong reason asserted for not permitting the attachment. The language of the relevant federal statutes and the United States Supreme Court decision make it clear that we do not have the luxury of deciding the case on the basis of what is the "right" or desirable result. Plaintiff herein is a judgment creditor. Neither past-due child support nor alimony is involved. We find no legal basis for holding the funds are not exempt due to some implied exception.

As a fall-back position, plaintiff argues that the money in the certificate of deposit has lost its character as social security proceeds.

Citing *Porter v. Aetna Casualty Co.*, 370 U.S. 159, 8 L. Ed. 2d 407, 82 S. Ct. 1231 (1962), as authority, plaintiff contends that in order to retain the statutory exemption defendant must show that

the funds attached are proceeds of social security benefits; that the funds are necessary for the support of himself and/or his family; and that the funds must be readily available and retain the quality of moneys. Because defendant can show no evidence of the last two points, plaintiff asserts, his funds do not retain their exempt status. Plaintiff argues that, once defendant placed the money in a certificate of deposit, the funds were no longer exempt because they became a permanent investment.

In *Porter*, a judgment creditor was allowed by the lower court to attach VA benefits (subject to a similar exemption from attachment) held in a federal savings and loan association. Because, by virtue of the deposit, the recipient had become a shareholder of the association rather than a creditor, and because his funds were subject to withdrawal only after a 30-day demand, the creditor argued that the funds had lost their exempt status. The Supreme Court rejected this argument. Agreeing with the district court's assessment that a withdrawal of these funds could be made as quickly as a withdrawal from a checking account, the Court found that these funds retained the quality of monies and thus retained their exempt status. As for the argument that these deposits were permanent investments, the Court noted that they were "not of a speculative character nor were they time deposits at interest." 370 U.S. at 162. The Court believed that Congress

"intended that veterans in the safekeeping of their benefits should be able to utilize those normal modes adopted by the community for that purpose—provided the benefit funds, regardless of the technicalities of title and other formalities, are readily available as needed for support and maintenance, actually retain the qualities of moneys, and have not been converted into permanent investments." 370 U.S. at 162.

The bare reference in *Porter* to time deposits at interest is not persuasive. Certificates of deposit generally pay higher rates of interest than savings accounts in exchange for some restrictions on access. If immediate access to the funds is less important than the higher interest rate, certificates of deposit are frequently the preferred vehicle of savings deposits. Certificates of deposit are certainly "normal modes adopted by the community" for the safekeeping of funds. We find no legal basis for concluding that funds

in certificates of deposit are permanent investments which have lost the quality of money.

We conclude the district court erred in holding that the monies held by the bank which were received as social security benefits were not exempt from attachment/garnishment by the plaintiff. Because of the result reached by the district court, it made no determination as to how much of the funds were attributed to earned bank interest and to defendant's monthly inmate pay. Monies from those two sources are not exempt and may be reached by plaintiff.

The judgment allowing the attachment/garnishment is reversed, and the case is remanded to the district court to determine the amount of funds available to plaintiff.

ABBOTT, J., dissenting: I would accept the United States Supreme Court's language in *Porter v. Aetna Casualty Co.*, 370 U.S. 159, 8 L. Ed. 2d 407, 82 S. Ct. 1231 (1962), at face value. It appears to me the Supreme Court is saying that permanent investments lose the statutory protection and that investments of a speculative character or *time deposits at interest* are permanent investments.

I would therefore affirm the trial court and, if the United States Supreme Court did not mean what it said, give the Court an opportunity to clarify its language.