HARDY & HARDY, Appellant v.
JOHN WILLS, Respondent

No. 25369

May 19, 1998                                    958 P.2d 78

*Muije & Varricchio*, Las Vegas, for Appellant.

*John Wills*, Las Vegas, in Proper Person.

---

## OPINION

*Per Curiam:*

Respondent John Wills retained the law firm of Hardy & Hardy in June 1991 to help him recover workers' compensation benefits for a job-related injury. Wills agreed to pay the firm 25% of the gross amount recovered, unless he terminated the representation before recovering benefits or receiving or accepting a settlement offer. In the event that Wills terminated the representation before recovering benefits or receiving or accepting a settlement offer, he agreed to pay for all services rendered at the firm's prevailing hourly rate plus out-of-pocket costs.

In September 1991, Wills was offered $40,664.68 to settle his claim. Wills rejected the offer, and fired Hardy & Hardy. The firm subsequently billed Wills $10,253.37: $10,161.17 as its fee (25% of the settlement offer), plus out-of-pocket costs of $92.20. Wills refused to pay the bill, so the firm filed an action against Wills in October 1992. Wills' failure to answer resulted in the entry of a default judgment against him in February 1993 for the principle amount of $10,253.37, plus pre-judgment interest of $1,743.07, costs of $255.00, and attorney's fees of $2,560.00.

On June 7, 1993, the district court clerk issued writs of execution and garnishment, which were immediately served on Wills' credit union. The credit union responded on June 8, 1993, and delivered to the sheriff a check for $118.32, the entire balance of Wills' savings account. On June 9, 1993, the sheriff

endorsed the check and delivered it to counsel for Hardy & Hardy.

On June 15, 1993, Wills filed an affidavit claiming his savings account consisted of disability compensation, exempt from execution under NRS 616.550. Wills subsequently moved to set aside the default judgment. The district court denied the motion in December 1993.[1]

Meanwhile, in October 1993, Hardy & Hardy filed a "motion to determine claim of exemption." In support of its motion, the firm submitted an affidavit of the attorney representing it, asserting Wills testified in July 1993 at a show cause/contempt proceeding "that it was his routine practice, upon receipt of his monthly SIIS disability income check, to take that check to a casino for cashing at a paycheck wheel, and at some subsequent date, deposit any funds remaining into his bank account" at the credit union. Based on the cashing of the SIIS check and the subsequent deposit of remaining funds in a general account, the firm argued the funds lost their exempt status.

The district court disagreed. In February 1994, the court declared Wills' savings account funds exempt from execution and ordered Hardy & Hardy to return the garnished funds to the sheriff. Hardy & Hardy timely appealed.

We are asked to decide whether workers' compensation funds remain exempt from attachment, garnishment and execution under NRS 616C.205 (formerly NRS 616.550) after the compensation check is paid to the worker and negotiated by him. The question is one of statutory construction, which we review de novo. Nyberg v. Nev. Indus. Comm'n, 100 Nev. 322, 324, 683 P.2d 3, 4 (1984).

When the writ of execution was issued in this case, former NRS 616.550 provided, in relevant part:

> compensation payable under this chapter, whether determined or due, or not, is not, before the issuance and delivery of the check, assignable, is exempt from attachment, garnishment and execution, and does not pass to any other person by operation of law.

The statute was amended in 1993 and redesignated NRS 616C.205, but the language relevant to this appeal was not changed. The definition of "compensation" also has not changed

---

[1]Wills appealed from the district court's order denying his motion to set aside the default judgment. This court dismissed his proper person appeal on March 31, 1997.

in any significant way. Former NRS 616.045 was amended and redesignated NRS 616A.090; however, both versions provide

> 'Compensation' means the money which is payable to an employee or to his dependants as provided for . . ., and includes benefits for funerals, accident benefits and money for rehabilitative services.

Although the exemption statute has existed since 1913, this court has interpreted it only once. In Dunseath v. Industrial Commission, 52 Nev. 104, 282 P. 879 (1929), an injured worker's attorney sought to compel the commission to pay him $600 out of the worker's award. The attorney alleged that amount was the agreed compensation for his services in securing a larger award for the worker than had been allowed by the commission. The district court dismissed the case after concluding the contract for compensation of the attorney out of the award money was void under the exemption statute. This court affirmed, concluding the compensation awarded by the judgment was within the scope of the exemption statute, which mandated payment of the award only to the claimant. Regarding the validity of the contract, this court held the worker and his attorney "were not prohibited by the [exemption statute] from contracting for the payment of an attorney fee to the latter, but from agreeing that it should be paid out of the award."[2] *Id.* at 111, 282 P. at 880. *Dunseath* does not address the issue presently before us.

Cases from other states that have addressed the issue are in conflict, based in large part on variations in statutory language and individual legislative history. *See* Jay M. Zitter, Annotation, *Validity, Construction, and Effect of Statutory Exemptions of Proceeds of Workers' Compensation Awards*, 48 A.L.R. 5th 473, § 18, at 534-47 (1997). The opinions in some of the cases support a broad exemption that provides maximum protection to injured workers by covering the bank deposits or property into which compensation proceeds have been converted.[3] We do not believe that our legislature intended such a broad exemption, however.

---

[2] The posture of the case on appeal is such that the issue is not before us; thus, we do not decide whether the Hardy & Hardy retainer agreement violates the *Dunseath* prohibition against providing for payment of an attorney's fee out of a compensation award.

[3] For example, in the case relied upon by the district court, Billingslea v. Tartell, 35 S.E.2d 89 (W. Va. 1945), the court held money received as workers' compensation retained its exemption after it was delivered to the claimant and deposited in a bank. The court noted the claimant had no practical way of collecting his compensation other than to cash the check and no reasonable way to safeguard it except by leaving it on deposit. The court reasoned the compensation money did not lose its exemption by being deposited in the bank because it had not been spent, invested or commingled,

As it was originally enacted, the statutory exemption provided:

> No money paid, or payable, under this act out of the state insurance fund shall, prior to the issuance and delivery of the warrant therefor, be capable of being assigned; nor shall the same be ever taken in execution, or attached or garnished, nor shall the same pass to any other person by operation of law. Any such assignment or charge shall be void.

1913 Nev. Stat., ch. 111, § 28, at 148.

In the next legislative session, the section 28 exemption was amended so that the relevant portion read:

> Compensation payable under this act, whether determined or due, or not, shall not, prior to the issuance and delivery of the warrant therefor, be assignable; shall be exempt from attachment, garnishment, and execution, and shall not pass to any other person by operation of law; . . .

1915 Nev. Stat., ch. 190, § 10, at 291.

As amended, money or compensation "paid" is no longer included in the exemption, and the exemption is no longer permanent. In 1947 the exemption was repealed, re-enacted and recodified, but the 1915 changes to which we refer were retained and remain to this day. 1947 Nev. Stat., ch. 168, § 66, at 592-93, and § 100, at 604; NRS 616C.205 (formerly NRS 616.550).

Given the language and history of the exemption statute, we are unable to construe it to exempt compensation once it has been paid to a worker. It is well settled that words in a statute will be given their plain meaning unless doing so violates the spirit of the act. McKay v. Bd. of Supervisors, 102 Nev. 644, 648, 730 P.2d 438, 441 (1986). Compensation that is "payable" is money that is due or is to be paid; it is not money that has been paid. It is ordinarily presumed that the legislature, by deleting an express portion of a law, intended a substantial change in the law. *Id.* at 650, 730 P.2d at 442. The legislature removed an exemption for money paid, and we may not recreate that exemption.

We note the Supreme Court of Oregon, construing similar statutory language and legislative history in McCabe v. Fee, 568 P.2d 661 (Or. 1977), reached the same result that we reach today. Furthermore, the Oregon court observed that an exemption for compensation before it is paid to the worker serves a reasonable

and had not lost its identity. *Id.* at 94. Though the opinion makes an appealing policy argument in support of a broader exemption, we leave to the legislature the decision whether to broaden Nevada's exemption statute.

purpose: it protects employers, insurers, and the state workers' compensation fund from the necessity of dealing with garnishments by injured workers' creditors, while providing the workers some protection by assuring that compensation benefits will reach them intact so they can control the immediate disposition of the money. *Id.* at 662.

We therefore reverse the order of the district court declaring Wills' savings account funds exempt from execution and ordering Hardy & Hardy to return the garnished funds to the sheriff, and remand this matter to the district court for further proceedings consistent with this opinion.