This timely appeal comes for consideration upon the record in this matter and Appellant's brief. Appellant Thomas Mizell (hereinafter "Thomas") appeals from the Jefferson County Court of Common Pleas judgment entry ordering him to pay $43,899.16 in child support arrearage. For the following reasons, we affirm the decision of the trial court.
Thomas and his wife Susan Mizell (hereinafer "Susan") obtained a divorce in 1979. The divorce decree granted Thomas full visitation rights with his daughter but also required that he pay $200 a month for child support. Some time later, Thomas and Susan came to an oral agreement that, if Thomas did not exercise his visitation rights, he would no longer have to pay child support. Susan stopped working full time and applied for Aid for Dependent Children.
On December 1, 1992, the Jefferson County Child Support Enforcement Agency (hereinafter "CSEA") brought an action against Thomas for support payments made to Susan in the amount of $21,599.68. The CSEA attempted service on Thomas via certified mail but the summons and complaint were returned unclaimed. A Notice of Failure of Service was filed on January 4, 1993, and the complaint was sent out again by regular mail. They were not returned.
A hearing was held on January 25, 1993. Thomas did not appear. Consequently, default judgment was entered against him. Almost seven years later, on January 12, 2000, a notice of default judgment was sent to Thomas. On February 18, 2000, Thomas requested an administrative mistake of fact hearing to contest the judgment in the amount of $37,079.45. On July 5, 2000, a hearing was held regarding the arrearage. Thomas did not contest the amount of the arrearage, however, he did attack the original order alleging failure of service. He also complained that Susan informed their daughter and the CSEA that he was dead.
Thomas argued that the delay in the CSEA's pursuit of back child support was prejudicial to him in that at the time the judgment was entered he was gainfully employed. He stated that he could have paid the debt at the time the child support accrued, but since then, he has contracted a terminal form of cancer and has gone through several operations and various forms of treatment including chemotherapy. He has been on disability since 1994 and receives $963.00 per month from Social Security.
On March 27, 2000, Thomas' case was transferred to a domestic magistrate pursuant to Civ.R. 53(C). Thomas timely filed objections to the magistrate's decision and the case proceeded to hearing before the trial court. On July 6, 2000, the trial court vacated the January 25, 1993 judgment entry but found that the arrearage still stood. The trial court declared Susan estopped from recovering any past due amounts although the Mizell's daughter was granted judgment in the amount of $2,208.55. Likewise, the State of Ohio, through the Department of Human Services, received judgment in the amount of $41,690.61. The trial court ordered Thomas to pay back the arrearage at the rate of $200 per month. It is from that judgment that Thomas now appeals.
As a preliminary matter, the appellee in this case did not file a brief. Pursuant to Appellate Rule 18(C), this court may accept the appellant's statement of the facts as correct and reverse the judgment if appellant's brief reasonably appears to sustain such action.
This appeal stems from the trial court judgment entry ordering Thomas to pay $200 per month for support arrearage. However, the original hearing regarding calculation of support arrearage was held before a domestic relations magistrate pursuant to Civ.R. 53(C) and 75(C). Once a magistrate's decision has been filed in a given matter, the parties have fourteen days to file written objections. Civ.R. 53(E)(3)(a). Provided no written objections to the magistrate's decision are filed, and there does not exist any error of law or other defect on the face of the decision, the trial court may adopt the magistrate's findings of fact and conclusions of law. Civ.R. 53(E)(4)(a). Moreover, "[a] party shall not assign as error on appeal the court's adoption of any finding of fact or conclusion of law unless the party has objected to that finding or conclusion under [Civ.R. 53(E)(3)(a)]." Civ.R. 53(E)(3)(b).
In the present case, Thomas properly and timely objected to every error presently argued on appeal, although his assignments of error were not couched in terms of the trial court adopting or overruling the magistrate's decision. It appears the trial court did not adopt the magistrate's decision, but instead modified the decision by reducing the amount of payments Thomas would be required to make. Despite that reduction, Thomas has appealed the trial court's decision assigning four errors.
As they involve similar propositions of law, Thomas' first two assignments of error will be addressed jointly, and alleged as follows:
 "The Trial Court erred by abusing its discretion determining that the Defendant, obligor was to pay an excessive amount for child support arrearage out of his total monthly income, when it was made obvious that the Defendant was financially insolvent as shown by the financial statements, written and oral, supplied to the Jefferson County Child Support Enforcement Agency.
 "The Trial Court abused its discretion when it failed to follow the requirements of Ohio Revised Code Section 3109.05, in not considering the financial plight of the Defendant obligor."
Thomas contends the $200 per month that will be taken out of his social security payment will cause him to seek public assistance as his expenses exceed his income. Thomas further argues the trial court did not consider his medical plight as he is suffering from cancer, has gone through several operations and is terminally ill.
Thomas provided the trial court with a list of assets and liabilities as follows:
Total income. . . . . . . . . . . +$960.00
 Liabilities Health ins. . . . . . . . . . . . $216.33 Rent. . . . . . . . . . . . . . . $300.00 Electric. . . . . . . . . . . . . . $75.00 Phone. . . . . . . . . . . . . . . $50.00 Auto Insurance. . . . . . . . . . . $52.06 Fuel. . . . . . . . . . . . . . . . $50.00 Food. . . . . . . . . . . . . . . $400.00 Co-pays(medicine). . . . . . . . . $20.00
Total Liabilities. . . . . . . . -$1163.39
At the July 5, 2000 hearing, the court asked "How do you live then? From what you've indicated your expenses exceed your monthly income; is that correct?" Thomas responded, "I wouldn't be able to make it on my own right now if it wasn't for very charitable friends. I've got a friend of mine right now who used to be a business partner, he's letting me live with him."
In support of his argument that the trial court erred by ordering him to pay an excessive monthly amount toward the child support arrearage, Thomas refers to R.C. 3109.05, which directs the reader to other chapters containing the child support guidelines and forms for calculation.
What Thomas has failed to recognize, however, is the trial court was not determining the amount of child support he must pay, rather the rate at which the arrearage must be paid back to the state. Different rules of law apply in this situation, namely, R.C. 3113.21 and Section 1673(b), Title 15, U.S. Code. R.C. 3113.21 states, in pertinent part, that:
 "(D) If a court is required * * *, the court shall issue one or more of the following types of orders to pay the support required under the support order and also, if required by either of those divisions, any other section of the Revised Code, or the court, to pay any arrearages:
 "(1)(a) If the court or the child support enforcement agency determines that the obligor is employed, the court shall issue an order requiring the obligor's employer to withhold from the obligor's personal earnings, a specified amount for support in satisfaction of the support order * * *. To the extent possible, the amount specified in the order to be withheld shall satisfy the amount ordered for support in the support order plus any arrearages that may be owed by the obligor under any prior support order that pertained to the same child or spouse * * *. However, in no case shall the sum of the amount specified in [ 600 N.E.2d 841] the order to be withheld and any fee withheld by the employer as a charge for its services exceed the maximum amount permitted under section 303(b) of the `Consumer Credit Protection Act,' 15 U.S.C. § 1673(b)." (Emphasis added.)
Section 303(B) of the Consumer Credit Protection Act, Section 1673(b), Title 15, U.S. Code, states in pertinent part, that:
 "(2) The maximum part of the aggregate disposable earnings of an individual for any workweek which is subject to garnishment to enforce any order for the support of any person shall not exceed —
 "(A) where such individual is supporting his spouse or dependent child (other than a spouse or child with respect to whose support such order is used), 50 per centum of such individual's disposable earnings for that week; and
 "(B) where such individual is not supporting such a spouse or dependent child described in clause (A), 60 per centum of such individual's disposable earnings for that week; except that, with respect to the disposable earnings of any individual for any workweek, the 50 per centum specified in clause (A) shall be deemed to be 55 per centum and the 60 per centum specified in clause (B) shall be deemed to be 65 per centum, if and to the extent that such earnings are subject to garnishment to enforce a support order with respect to a period which is prior to the twelve-week period which ends with the beginning of such workweek."
In the present case, the trial court ordered Thomas to pay $200 which is only 20% of his monthly social security check. The trial court did not abuse its discretion in ordering a payment in that amount, nor did the court err by permitting the garnishment of Thomas' social security benefits.
Further, under 42 U.S.C. § 659, social security disability benefits payable to a parent are subject to legal process to enforce the parent's outstanding child support obligations notwithstanding the exemption otherwise provided by 42 U.S.C. § 407. State ex rel. Miller v. Comer
(February 24, 2000), Cuyahoga App. No. 75763, unreported. See alsoKnickerbocker v. Norman (C.A.8, 1991), 938 F.2d 891; Whitmore v. Kenney
(Pa. 1993), 626 A.2d 1180; Mariche v. Mariche (1988), 243 Kan. 547,758 P.2d 745. See also E.W. v. Hall (1996), 260 Kan. 99, 917 P.2d 854;Hobson v. Hobson (1995), 136 Or. App. 516, 901 P.2d 914.
Finally, Thomas argues the trial court could have recognized a defense of laches, contending that both Susan and the CSEA knew where Thomas was residing but never attempted collection until fourteen years later. It is well established that neither the defense of laches, nor principles of estoppel will apply against the state, its agencies or agents when exercising governmental functions. Halluer v. Emigh (1992),81 Ohio App.3d 312, Griffith v. J.C. Penney Co. (1986), 24 Ohio St.3d 112,113. The rationale behind this rule is one of public policy. The public should not suffer due to the inaction of public officials. Campbell v.Campbell (1993), 87 Ohio App.3d 48, 50. Thomas' first two assignments are meritless.
In his third assignment of error, Thomas alleges:
 "The Trial Court abused its discretion when ruling on and sustaining a Judgment Entry of January 1993, awarding a judgment against the Defendant obligor for child support arrearage, when Defendant never received notice of the hearing or a copy of the Judgment Entry, and therefore could not appear, defend or object to that January 1993 Entry."
Thomas essentially argues he did not receive notice of the hearing held on January 25, 1993, nor did he receive the Judgment Entry granting judgment to the Jefferson County CSEA in the sum of $21,599.66 plus %10 interest. This argument is irrelevant as the trial court vacated the judgment of January 25, 1993, but nonetheless found the arrearage remained. Since an arrearage begins to accrue interest at the time of default, Thomas would have to pay the same amount of interest regardless of whether the CSEA instituted suit eight years ago or eight days ago as the interest is not tolled by a judgment.
Pursuant to R.C. 3123.17,
 "If the court determines the obligor is in default under a support order, the court shall issue a new order requiring the obligor to pay support. If the court determines the default was willful, the court shall assess interest on the arrearage amount from the date the court specifies as the date of default to the date the court issues the new order requiring the payment of support and shall compute the interest at the rate specified in division (A) of section 1343.03
of the Revised Code. The court shall specify in the support order the amount of interest the court assessed against the obligor and incorporate the amount of interest into the new monthly payment plan."
In the absence of factors making it inequitable, a right to interest under R.C. 1343.03(A) on unpaid child support accrues on the date each installment becomes due, and runs until paid. Allen v. Allen (1990),62 Ohio App.3d 621. Such interest may be included in a lump-sum judgment for arrearage in child support. Id. Thomas will therefore be required to pay back the arrearage plus interest.
Thomas next contends the oral agreement between he and his wife should be binding as it pertains to past obligations which can be discharged by a mutual agreement. However, his wife is not the real party in interest in this case. It is wholly irrelevant that there existed a mutual agreement between those two parties as the mother assigned her rights to collect child support to the CSEA.
As an agency of the Department of Human Services, the CSEA can collect from an obligor spouse state funds paid for a child's welfare. See R.C.5107.04. Pursuant to R.C. 5107.07(A)(2), the mother's acceptance of ADC would constitute an assignment of her rights to CSEA and CSEA would be a proper party to any child support action. Cramer v. Petrie (1994),70 Ohio St.3d 131; Cuyahoga Cty. Support Enforcement Agency v. Lozada
(1995), 102 Ohio App.3d 442. This assignment of error is meritless.
Thomas argues in his fourth and final assignment of error:
 "The Trial Court abused its discretion when it did not consider that the support arrearage accumulated over fourteen (14) years should have been denied where evidence was presented that the Plaintiff mother had waived her right to child support at the time of the divorce in order to deny the father obligor contact with his child; and even declared the father dead."
As previously stated, Susan assigned her right to receive child support when she applied for ADC. CSEA is the real party in interest as the state had been supporting the couple's minor child through ADC payments. The state did not and could not waive support payments.
Waiver is a concept which applies to an individual who freely waives his own rights and privileges. See State ex rel. Ford v. Cleveland Bd. ofEdn. (1943), 141 Ohio St. 124, 127. The public interest may not be waived. Just as with laches and estoppel, it would not be sound public policy to allow individuals employed by the CSEA to waive the public's right to the support arrearages owed by an obligor. Campbell v. Campbell
(1993), 87 Ohio App.3d 48, 50. This assignment of error is also meritless.
For the preceding reasons, we affirm the decision of the trial court.
Vukovich, P.J., Concurs.
Donofrio, J., Concurs.