No. 86,433

DECKER & MATTISON CO., INC., *Plaintiff/Appellant*, v. CHARLES WILSON, d/b/a/ BROWN, WILSON HEATING & AIR CONDITIONING, *Defendant/Appellee*, and FIRST COMMERCIAL BANK, N.A., *Garnishee.*

(44 P.3d 341)

Opinion filed April 19, 2002.

*E. Dexter Galloway*, of Hutchinson, argued the cause and was on the brief for appellant.

*James M. Holmberg*, of Kansas City, argued the cause, and *Thomas D. Arnhold*, of Thomas D. Arnhold, P.A., of Hutchinson, was on the brief for appellee.

The opinion of the court was delivered by

BRAZIL, J.: Decker & Mattison Co., Inc., (D & M) appeals the district court's decision to quash the garnishment of Charles Wilson's certificate of deposit (CD). D & M argues the court erred when it determined that proceeds from a workers compensation settlement used to purchase the CD were exempt from garnishment under K.S.A. 2001 Supp. 60-2313(a)(3) and K.S.A. 44-514.

The facts in this case are straightforward. On February 9, 1999, Charles Wilson received $77,449.44 after settling his workers compensation case. Wilson opened a joint savings account in First Commercial Bank in Humboldt with his wife, Janeen, on February 10, 1999, and deposited all but $4000 of the settlement. On April 9, 1999, Wilson withdrew $5,000 from the account and purchased a CD at the same bank. The only deposit in the account prior to the April 9, 1999, withdrawal was the workers compensation settlement.

D & M filed a petition on January 13, 1999, against Wilson and Randy Brown in connection with their business, Brown, Wilson Heating & Air Conditioning. D & M alleged a debt against Wilson and Brown in the amount of $5,851.89, plus interest of $269.36. The district court eventually entered judgment in D & M's favor against Wilson, but not Brown, in the amount of $3,968.20 on July 27, 1999. The certified copy of the appearance docket indicates Brown was dismissed from the case.

D & M requested that the district court serve the First Commercial Bank a garnishment order in the amount of $6,518.92 on September 25, 2000. The First Commercial Bank, the garnishee, stated in its answer that it was indebted to Wilson in the amount of $5,327.31.

Wilson requested a hearing to dispute the garnishment on the grounds that the funds were exempt from seizure and sale pursuant to K.S.A. 2001 Supp. 60-2313(a)(3) and K.S.A. 44-514. A hearing was held and the district court quashed D & M's order of garnishment, holding the CD to be exempt property.

D & M timely appealed the case to the Court of Appeals. This court transferred the case pursuant to K.S.A. 20-3018(c).

D & M argues the district court erred in finding Wilson's CD was exempt from seizure and sale under K.S.A. 2001 Supp. 60-2313(a)(3) and K.S.A. 44-514. The interpretation of a statute is a question of law, and this court's review is unlimited. *Hartford Cas. Ins. Co. v. Credit Union 1 of Kansas*, 268 Kan. 121, 124, 992 P.2d 800 (1999).

Workers compensation benefits are generally exempted from seizure and sale to satisfy a judgment as provided in K.S.A. 2001 Supp. 60-2313:

"(a) Except to the extent otherwise provided by law, every person residing in this state shall have exempt from seizure and sale upon any attachment, execution or other process issued from any court in this state:

. . . .

(3) Any workers' compensation exempt from process pursuant to K.S.A. 44-514 and amendments thereto."

K.S.A. 44-514 provides:

"(a) Except as provided in subsection (b), K.S.A 23-4,146 or the income withholding act and amendments thereto, no claim for compensation, or compensation agreed upon, awarded, adjudged, *or paid*, shall be assignable or subject to levy, execution, attachment, garnishment, or any other remedy or procedure for the recovery or collection of a debt, and this exemption cannot be waived." (Emphasis added.)

D & M's argument can be broken into three elements. D & M argues Wilson is not protected from the exemption because the nature of the workers compensation settlement was changed by: (1) the mere establishment of a savings account, which created a creditor/debtor relationship between Wilson and the bank; (2) the establishment of joint ownership with his wife over the savings account; and (3) the purchase of a CD. A review of Kansas law

shows none of these events were sufficient to make the exemption inapplicable.

This court in *McGhee v. Sinclair Refining Co.*, 146 Kan. 653, 659-60, 73 P.2d 39 (1937), used strong language to characterize the language in K.S.A. 44-514: "This certainly indicates the intention on the part of the legislature that compensation should go to the injured workman or his dependents, and to no one else." The court in *Egy v. United States Fidelity & Guaranty Co.*, 8 Kan. App. 2d 144, 148-49, 651 P.2d 954 (1982), *aff'd* 233 Kan. 234 (1983), held: "In short, and excepting only liens for attorney fees (K.S.A. 44-536; *Graham v. Elevator Co.*, 115 Kan. 143, 145-146, 222 Pac. 89 [1924]), workers' compensation can only be paid to the claimant and no creditor can reach workers' compensation paid, being paid or to be paid. (See, for example, *McGhee v. Sinclair Refining Co.*, 146 Kan. 653, 659-660, 73 P.2d 39 [1937].)"

The law governing the exemption of workers compensation benefits is not uniform across states. See Annot., *Validity, Construction, and Effect of Statutory Exemptions of Proceeds of Workers' Compensation Awards*, 48 A.L.R.5th 473, 534-53. The following factors are cited by courts as relevant: (1) the particular statutory language granting the exemption; (2) how easily the funds are identified as stemming from the workers compensation award; and (3) whether the character of the award has changed. In Kansas, the statutory language supports extending the exemption protection until after the employee has received the compensation. Further, the funds in this case are easily identifiable. Last, as discussed below, this court has held, albeit in a slightly different context, that holding exempt funds in a CD does not sufficiently change the nature of money such that an exemption is inapplicable.

*Statutory Language*

As resolution of this case turns on the interpretation of a statute, it is natural to begin with the language of the statute. The subject of the exemption statute in K.S.A. 44-514(a), which is quoted above, is "claim," which is modified by the prepositional phrase, "for compensation, or compensation agreed upon, awarded, adjudged *or paid*." (Emphasis added.) K.S.A. 44-514. With the use

of the emphasized words, the Kansas statute clearly contemplates continued protection of the exemption until after the compensation has reached the hands of the employee.

The contrast between the language in the Kansas statute and other states is instructive. There is authority in other states that an exemption of workers compensation benefits from seizure and sale no longer protects the workers compensation check once the claimant is in actual possession of the check. The Ohio Supreme Court explained the distinction succinctly in *Ohio Bell Tel. Co. v. Antonelli*, 29 Ohio St. 3d 9, 10, 504 N.E.2d 717 (1987):

"Under R.C. 2329.66, workers' compensation benefits are expressly exempt from attachment but only as limited by the provisions of R.C. 4123.67. R.C. 4123.67 expressly exempts workers' compensation benefits only *'before* payment' is made to claimant. There is no exemption of benefits from attachment provided for under either statute *after* the award has been paid to the claimant."

The *Antonelli* court further noted the state legislature provides for the exemption, and it is up to the legislature to change the extent of protection provided in the exemption. 29 Ohio St. at 11. Oregon and Nevada reach the same conclusion considering not only the statutory language, but also statutory amendments omitting language which could have been used for a more extensive exemption. See *McCabe v. Fee*, 279 Or. 437, 440, 568 P.2d 661 (1977) ("The legislature has deliberately removed an exemption which applied to 'all moneys paid.' "); *Hardy & Hardy v. Wills*, 114 Nev. 585, 589, 958 P.2d 78 (1998) ("Given the language and history of the exemption statute, we are unable to construe it to exempt compensation once it has been paid to a worker. It is well settled that words in a statute will be given their plain meaning unless doing so violates the spirit of the act.").

To contrast the approach of the Ohio court, which was dictated by specific statutory language, the analysis of statutory language involving the words "payment" or "paid" leads us to conclude the Kansas statutes exempt funds already in the hands of the worker. See *East Moline Works Credit Union v. Linn*, 51 Ill. App. 2d 97, 100-01, 200 N.E.2d 910 (1964). As noted above, the Kansas exemption extends to compensation *paid.*

D & M argues the creation of the debtor/creditor relationship in connection with the savings account ends the protection of the exemption statute. We disagree.

Because K.S.A. 44-514 exempts funds paid, it is consistent with the legislative intent to extend such exemption until after the funds have been deposited in a bank account. D & M suggests Wilson could have avoided the standard debtor/creditor relationship by establishing a "cestui que trust." D & M cites *Bloomheart v. Bank Commissioner*, 114 Kan. 786, 221 Pac. 279 (1923). However, *Bloomheart* merely stands for the proposition that there is a distinction between a standard deposit of funds, in which case the depositor does not expect to receive later the *exact* thing deposited, and a bailment, in which case the depositor expects to receive the identical thing left, although in altered form. See 114 Kan. at 794-95. The distinction was important in *Bloomheart* to determine whether the depositor could seek the benefit of the "bank depositors' guaranty fund" after the bank had closed its doors. 114 Kan. at 787-88.

D & M's suggestion of a "cestui que trust" is not persuasive. The use of bank accounts, savings accounts, and—as will be demonstrated below—certificates of deposits, is standard practice. To require recipients of workers compensation to avoid these arrangements would not benefit creditors such as D & M, but would only place a further burden on the injured worker.

### Readily Identifiable

As some of the authorities above have suggested, another consideration in the evaluation of the exemption is how easily identifiable the funds are. See *Matthews v. Lewis*, 617 S.W.2d 43, 46 (Ky. 1981) ("We hold that unless they provide clearly to the contrary, Kentucky's exemption statutes, including but not limited to KRS 342.180, extend protection to deposits in bank checking accounts so long as those deposits can be identified as or traced to payments of exempt funds."); *Gaunce v. State ex. rel. Dept. of Human Services*, 885 P.2d 688, 691 (Okla. App. 1994) ("The exemption provision has been interpreted to apply beyond the award and judgment phase of rights and has been extended to funds *after*

claimant has received them and even deposited them, provided they were unmingled with other funds."). In the present case, there is no question but that the money in the savings account originated from exempt funds. Furthermore, because there were no other deposits before the purchase of the CD, the funds used to purchase the CD are likewise easily traced back to exempt funds.

### Certificate of Deposit

This court in *E.W. v. Hall*, 260 Kan. 99, 917 P.2d 854 (1996), considered whether a federal exemption protecting social security benefits would also protect those benefits if they were deposited in a savings account or invested in a CD. The plaintiff in *Hall* obtained a judgment against the defendant and tried to collect through attachment from the defendant's bank accounts. The bank, as garnishee, replied to the order of attachment that the defendant owned a CD and a savings account. The defendant asserted the funds in the savings account and in the CD were mostly exempt because they represented funds he received as social security benefits.

As the social security exemption was provided by federal statute, the court applied an unlimited standard of review. 260 Kan. at 100. The *Hall* court reviewed two Kansas cases and three federal cases interpreting the federal statute. Then the court turned to the plaintiff's arguments. First, the court considered and rejected the plaintiff's argument that an exception to the exemption statute should be created based on public policy. Second, the court considered an argument relevant to the present case. The plaintiff argued "the money in the certificate of deposit has lost its character as social security proceeds." 260 Kan. at 104.

The *Hall* court's analysis of whether an exemption should also cover funds if they are held in a CD focused on a United States Supreme Court decision, *Porter v. Aetna Casualty Co.,*370 U.S. 159, 8 L. Ed. 2d 407, 82 S. Ct. 1231 (1962):

"In Porter, a judgment creditor was allowed by the lower court to attach VA benefits (subject to a similar exemption from attachment) held in a federal savings and loan association. Because, by virtue of the deposit, the recipient had become a shareholder of the association rather than a creditor, and because his funds were

subject to withdrawal only after a 30-day demand, the creditor argued that the funds had lost their exempt status. The Supreme Court rejected this argument. Agreeing with the district court's assessment that a withdrawal of these funds could be made as quickly as a withdrawal from a checking account, the Court found that these funds retained the quality of monies and thus retained their exempt status. As for the argument that these deposits were permanent investments, the Court noted that they were not of a speculative character nor were they time deposits at interest.' 370 U.S. at 162. The Court believed that Congress: 'intended that veterans in the safekeeping of their benefits should be able to utilize those normal modes adopted by the community for that purpose—provided the benefit funds, regardless of the technicalities of title and other formalities, are readily available as needed for support and maintenance, actually retain the qualities of moneys, and have not been converted into permanent investments.' 370 U.S. at 162.

"The bare reference in Porter to time deposits at interest is not persuasive. Certificates of deposit generally pay higher rates of interest than savings accounts in exchange for some restrictions on access. If immediate access to the funds is less important than the higher interest rate, certificates of deposit are frequently the preferred vehicle of savings deposits. Certificates of deposit are certainly 'normal modes adopted by the community' for the safekeeping of funds. We find no legal basis for concluding that funds in certificates of deposit are permanent investments which have lost the quality of money." 260 Kan. at 105-06.

Although the *Hall* decision interpreted federal law, it does indicate how this court has viewed the nature of a CD. From the language used in *Hall*, it is evident that money which has been converted into a CD retains the quality of money such that an exemption which originally protected the money will protect the certificate as well.

Furthermore, just as the *Hall* court pointed to federal law to supply its rationale of encouraging the safekeeping of social security funds for the support and maintenance of the beneficiaries in standard "modes adopted by the community for that purpose," this court can point to the same rationale to permit employers to safeguard their benefits "regardless of the technicalities of title and other formalities." 370 U.S. at 162. The purpose of our own workers compensation law is to restore earning power lost as a result of injury. *Kinder v. Murray & Sons Constr. Co.*, 264 Kan. 484, 493, 957 P.2d 488 (1998).

Not all jurisdictions extend exemption protection to funds held in a CD. In a letter of supplemental authority, D & M calls this

court's attention to *Feliciano v. McClung*, 210 W. Va. 162, 556 S.E.2d 807 (2001). Consideration of *Feliciano* begs two questions: (1) Is this approach at all appropriate under Kansas law; and (2) if it is, do the facts of the present case require this court to hold Wilson's CD is likewise an investment subject to seizure? While the *Feliciano* opinion makes a credible case for allowing a judgment creditor to seize a CD purchased with workers compensation funds, it is not controlling of the present issue. It is not clear from the record that the same equitable balance of interests is at stake in this case. In *Feliciano*, the judgment creditor was a victim of a horrible intentional tort which was committed by the defendant causing serious and permanent physical injury. There is no indication the present case involves such equitable interests.

### Joint Ownership

D & M's last argument focuses on the joint nature of the ownership of the savings account and CD. D & M argues the definition of "workers' compensation" as it is used in K.S.A. 2001 Supp. 60-2313(a)(3) does not include funds jointly held by Wilson and his wife. K.S.A. 2001 Supp. 60-2313(a)(3) exempts "[a]ny workers' compensation" pursuant to K.S.A. 44-514. D & M somehow argues a workers compensation check that is deposited in a joint bank account no longer meets the definition of "[a]ny workers' compensation."

D & M uses the terms "joint tenancy" and "tenants in common" in its brief on appeal. D & M refers to the following testimony of Wilson as authority that Wilson and his wife had a joint tenancy arrangement:

"Q. Is that a joint account?
"A. Yeah, I guess it would be. I got her name on it.
"Q. Well, if you were to die, it is hers?
"A. Correct."

And with respect to the CD:

"Q. Sure. That certificate of deposit, is that in your name and your wife's?
"A. Yes, it is, I believe so.
"Q. So she would be a joint owner then of that account or that certificate; is that what you are saying?

"A. Yes, she would."

The district court did not make a specific finding as to the nature of the ownership.

The parties cite authority for the proposition that garnishment of an account held in joint tenancy results in severance of the joint ownership and creation of a tenancy in common with a rebuttable presumption of equal ownership. See *Walnut Valley State Bank v. Stovall,* 223 Kan. 459, 462-64, 574 P.2d 1382 (1978).

We can deal with the nature of the joint ownership of the savings account and CD by relying on principles cited above. The logical rule with respect to joint accounts should be that workers compensation funds are exempted as long as they are reasonably identifiable and not commingled with other funds. It might be the case that some joint accounts would not pass this test because both joint tenants might be depositing and withdrawing funds, thus making it difficult to identify. However, in the present case, D & M relies solely on the fact of joint ownership without considering how easily identifiable the funds are. Again, the funds used to purchase the CD came exclusively from Wilson's workers compensation settlement. Likewise, any presumption of equal ownership of a tenancy in common is overcome in this case because the funds were easily identifiable.

D & M also argues the trial court erred in limiting its cross-examination of the defendant. The admission of evidence lies within the sound discretion of the trial court, and an appellate court's standard of review, with regard to a trial court's admission of evidence, is abuse of discretion. *Moore v. Associated Material & Supply Co.,* 263 Kan. 226, 244, 948 P.2d 652 (1997). An abuse of discretion must be shown by the party attacking the evidentiary ruling, and exists only when no reasonable person would take the position adopted by the trial court. *Jenkins v. T.S.I. Holdings, Inc.,* 268 Kan. 623, 633-34, 1 P.3d 891 (2000).

During its examination of Wilson, D & M questioned why all but $4,000 of the net $77,449.44 settlement check was deposited in the savings account. D & M argues the trial court erred in the following:

"Q. Now, in that, from that initial $77,000, did you just cash that check because you didn't put it all in savings account?

"A. No, I didn't.

"Q. What happened to the other $4,000?

"[WILSON'S ATTORNEY]: Your Honor, I'm going to object. I don't understand the relevance of this. This issue is whether the $5,000 that are [sic] in this CD are [sic] subject to garnishment. What happened to the rest of this settlement is not at issue here. The issue is, is this $5,000 exempt from garnishment, and I don't want to use this as a hearing-in-aid of execution as to what happened to all the other monies. If he wants to do that, he can file a hearing-in-aid. I believe he's already done that with Mr. Wilson previously.

"[D & M'S ATTORNEY]: Your Honor, my question was directed to how many hands or how many different things comp check go through. We know that it didn't all go in the savings account or so he testified. How many, how many purchases do we tract it through? I mean, I submit that when it became a deposit, it just became money because relationship, debtor-creditor between Mr. Wilson and the bank was created and they owe him money. Yes, but he, there comes a point, and it's past that now when what was originally received as workers compensation no longer is entitled to the workers compensation exemption because it's, it is just money now. We know that it's gone through at least two, and I am just trying to see if there probably third or fourth [sic] steps or conversion or that's what my questions [sic].

"THE COURT: I am going to overrule, I am going to sustain the objection."

D & M argues it was unable to trace the funds from that account.

Wilson argues that any transactions after the money was withdrawn to purchase the CD were beyond the scope of the hearing and, therefore, irrelevant. Wilson concedes on appeal he and his wife deposited funds in the savings account after the April 9, 1999, withdrawal; however, anything after April 9, 1999, is irrelevant for purposes of this appeal.

Wilson's attorney began the hearing from which the above language was quoted by stating the following purpose: "This is my motion to quash the garnishment on the grounds that the proceeds are from the Workers Compensation settlement and therefore are not garnishable pursuant to K.S.A. 60-2313." Those proceeds were in the form of a CD at the First Commercial Bank. Wilson testified the funds in the savings account used to purchase the CD came from his workers compensation and social security benefits; how-

ever the summary of Wilson's savings account transactions indicate the only funds in the savings account at the time of the withdrawal for the purchase of the CD were workers compensation funds. Wilson originally deposited all but $4,000 of the workers compensation funds in the savings account; but if the hearing was held to determine where the funds used to purchase the CD originated, the court was correct to prevent D & M's attorney from asking Wilson about other funds that were never deposited in the savings account. What Wilson did with the $4,000 that was not deposited in the savings account had nothing to do with the funds used to purchase the CD.

Was the district court correct in limiting the issue to the narrow question of ascertaining the origin of the funds used to purchase the CD? In its notice of appeal, D & M appealed the district court's order "in which the District Court found that the Certificate of Deposit was exempt property, and quashed the Order of Garnishment issued to the First Commercial Bank, N.A. of Humboldt, Kansas." While there is evidence in the record that D & M filed a motion for examination of judgment debtor and an order for a hearing on this motion was scheduled for September 1999, there is no indication in the record what became of this hearing. The court's order from which D & M appeals is confined to the narrow issue of whether the CD was exempted from seizure and sale pursuant to K.S.A. 2001 Supp. 60-2313(a)(2) and K.S.A. 44-514, and this is the only order D & M appeals. Thus, the district court did not err in limiting the testimony to matters involving the source of the funds used to purchase the CD.

Affirmed.

DAVIS, J., not participating.
BRAZIL, S.J., assigned.