In re Bradley Allen DOUGHMAN and Johni Sue Doughman, Debtors.

No. 98–12289.

United States Bankruptcy Court,
D. Kansas.

July 16, 1999.

Steven L. Speth, Wichita, KS, for debtors.

J. Michael Morris, Wichita, KS, pro se.

## MEMORANDUM OF DECISION

JOHN K. PEARSON, Bankruptcy Judge.

This matter is before the Court on the trustee's Motion for Turnover and the debtor's objections thereto. The Trustee, J. Michael Morris, appears pro se. The debtors appear through Stephen Speth of Speth, King and Riedmiller, Wichita, Kansas. The parties have submitted the matter on stipulations and briefs.[1]

### NATURE OF CASE

On May 28, 1998, the debtors filed a petition for relief under Chapter 7. On August 19, 1998, the trustee filed a motion for turnover of the $1,108.01 balance in the

---

**1.** The United States Trustee filed a comment on the trustee's motion for turnover. (*See* Doc. 38.)

debtors' bank account on the date of filing. The funds are prepetition earnings that were deposited into the account prior to the date of filing. On September 1, 1998, the debtors filed an objection to the motion, stating that the funds are exempt wages. Checks written by the Debtors prepetition cleared the account post petition and depleted the balance. For the reasons stated below, the Court grants the Trustee's Motion for Turnover and overrules the Debtors' Objection to the Motion.

## FACTS

The parties have stipulated to the relevant facts: [2]

1. The above bankruptcy case was filed on May 28, 1998.

2. At the end of the business day on May 28, 1998, the debtors had $1,108.01 in their checking account at The Bennington State Bank. Included in such amount was $359.40 from the debtor Bradley Doughman's wages, which had been deposited into the account on May 22, 1998, and $816.94 from the debtor Johni Doughman's wages, which had also been deposited into the account on May 22, 1998.

3. The day after the filing of the bankruptcy, May 29, 1998, the sum of $242.35 from Bradley Doughman's wages was deposited into the account. The wages were earned in full prior to the filing of the bankruptcy on May 28, 1998.[3]

## CONCLUSION OF LAW

1. The bank balance on the date of filing is an asset of the estate.

2. The debtors are not entitled to exempt part or all of the balance.

3. The Court cannot create an 'administrative exemption' as argued by the Debtors.

## DISCUSSION

The issue here goes beyond the relatively minor amount at issue in this particular case. Most debtors maintain checking accounts prepetition and few make the effort to "zero balance" those accounts as of the date of bankruptcy. Thus, in most consumer cases, the debtors end up with a balance in their checking account at the close of the banking day on which their petition is filed. Unfortunately, most debtors also have outstanding checks which have not cleared as of the date of the petition. There can be no argument that under both the Bankruptcy Code and Kansas law the bank balances are an asset of the estate. 11 U.S.C. § 541. In the absence of controlling federal law, "property" and "interests in property" are questions of state law. *Barnhill v. Johnson*, 503 U.S. 393, 112 S.Ct. 1386, 118 L.Ed.2d 39 (1992); *In re Ben Kennedy and Associates, Inc.*, 40 F.3d 318 (10th Cir.1994). In general, wages earned prepetition are property of the estate. *In re Calder*, 912 F.2d 454 (10th Cir.1990). It is also well established that checks do not effect a transfer of funds until they are honored by the bank. *Barnhill*, 503 U.S. at 394, 112 S.Ct. 1386. Thus, the bank balance on the date of filing is an asset of

2. The debtors have attached to their brief a document apparently obtained from the United States Trustee, showing distributions from various chapter 7 estates in 1998. The exhibit is not part of the stipulated record and has no direct relevance to the facts in this case and will not be considered here.

3. The stipulations of fact included a copy of the debtors' bank account statements from The Bennington State Bank for the period May 5, 1998, through June 2, 1998. A review of the bank records indicates that no money from any source other than wages was deposited immediately before the petition for relief.

the estate.[4]

■ The Trustee is clearly entitled to the funds unless the Debtors can demonstrate that they are entitled to claim some part or all of them as exempt under Kansas law. Debtor relies on K.S.A. § 60–2310(b) which exempts from *wage garnishment* an individual's "aggregate disposable earnings." "Wage garnishment" is a defined term under the statute: "... any legal or equitable procedure through which the earnings of any individual are *required to be withheld for payment of any debt;*" K.S.A. § 60–2310(a)(3) (emphasis supplied). The essence of a wage garnishment proceeding is that the debtor's employer is required to withhold some part of the debtor's earnings for payment of a debt. The Court need only look to the statute to conclude that, irrespective of whether the proceeds lose their character as "earnings" upon deposit into a bank account, the restrictions in K.S.A. § 60–2310 apply only to wages before they are paid to the debtor. To read the statute otherwise would read out of it the portion of the definition of "wage garnishment" referring to *withholding* earnings for payment of a debt. Moreover, as the Trustee notes, other Kansas statutes dealing specifically with exemption from legal process for debt collection are considerably broader in their wording, which suggests that a much narrower construction is necessary here.

■ In the case of *In re Sinker*, 113 B.R. 34 (D.Kan.1990), where the trustee sold the redemption rights of the debtors' nonexempt property, the District Court rejected the appellants contention that

K.S.A. § 60–2414(k) created an exception for redemption rights. The Court found that the creation of an exception by K.S.A. § 60–2414(k) "to the general rule that all property of a judgment debtor is subject to attachment, execution and levy to satisfy the judgment is not important in the context of bankruptcy." *Sinker*, 113 B.R. at 35. The Court went on to say that "the provisions of K.S.A. § 60–2414(k) do not constitute an exemption within the meaning of 11 U.S.C. § 522(b)(2)." *Id.* This reasoning was followed in *In re Garrity*, 144 B.R. 895 (Bankr.D.Kan.1992), where the court found that K.S.A. § 60–724(2) does not constitute an exemption within the meaning of 11 U.S.C. § 522(b)(2). "While the debtor's unliquidated medical malpractice claim is not subject to garnishment pursuant to K.S.A. § 60–724(2), the claim is property of the estate and cannot be claimed as exempt" *Id.* at 896.[5]

Further, as the Trustee points out, the Supreme Court, in construing similar language in the Consumer Credit Protection Act, concluded that it did not create an exemption in bankruptcy. *Kokoszka v. Belford*, 417 U.S. 642, 94 S.Ct. 2431, 41 L.Ed.2d 374 (1974). There the Court noted: " 'Just because some property interest had its source in wages ... does not give it special protection, for to do so would exempt from the bankrupt estate most of the property owned by many bankrupts, such as savings accounts and automobiles which had their origin in wages.' " *Kokoszka*, 417 U.S. at 648, 94 S.Ct. 2431 (quoting *In re Kokoszka*, 479 F.2d 990, 995 (2d Cir.1973)). Here, the court is compelled to

---

4. The Court does not reach the issue of when, on the date of filing, the balance is determined on the facts of this case. Obviously, better practice would be to assure that all outstanding checks are cleared *before* the petition is filed.

5. The Court is aware of *In re Adcock*, 234 B.R. 815, in which Judge Robinson found that K.S.A. § 60–2310 (restriction on wage garnishment) provides an exemption for 75% of a debtor's wages. It disagrees.

conclude that the state statute does not create an exemption for wages.

The Debtors argue that the Court should create or recognize an administrative exemption of $1,500.00 on the theory that the trustees should not have to administer a case with assets of less than $1,500.00. This Court does not have the authority to, in effect, legislate an exemption. The trustees make the decision about administration of estate assets and presumably, have discretion to decline to administer small estates. The Court is required to approve administrative fees and has discretion to deny fees. Certainly, the trustees should not be encouraged to administer an estate where from the outset it appears that there will be little or no distribution to creditors. Indeed, one of the enduring criticisms of the bankruptcy system in this country has been the appearance that it has been run solely for the benefit of the insiders.

The Seventh Circuit has noted:

It should go without saying that neither the trustee in bankruptcy nor the trustee's lawyer has a duty to collect an asset of the debtor's estate if the cost of collection would exceed the value of the asset. His duty is to endeavor to maximize the value of the estate, which is to say the net assets. The performance of this duty will sometimes require him to forbear attempting to collect a particular asset, because the costs of collection would exceed the asset's value. Put differently but equivalently, the care, diligence, and skill that a lawyer for the debtor's estate, like the trustee himself, is required to bestow as part of his fiduciary duty is not merely care, diligence, and skill in the prosecution of the estate's claims. It is also care, diligence, and skill in deciding which claims

to prosecute, and how far. This duty placed Aimen under an obligation to his client, the debtor's estate, to abandon the preference suit once it became reasonably obvious that further litigation would cost more than it was likely to bring into the estate.

*In the Matter of Taxman Clothing Co.,* 49 F.3d 310, 315 (7th Cir.1995) (citations omitted).

Thus, the creation an iron-bound minimum amount to administer should be reserved for Congress. Accordingly, the Court declines the Debtors' invitation to legislate.

### Conclusion

The Debtors' balance in their checking account, on the day of the bankruptcy filing, is an asset of the bankruptcy estate under 11 U.S.C. § 541. As the Court concludes that there is no basis for the Debtors' claim of exemption of the prepetition wages, it concludes that the Trustee is entitled to an order directing the Debtors to turnover to the Trustee the amount of $1,108.01.

THEREFORE, IT IS ORDERED that the Trustee's Motion for Turnover is granted, and the debtors' are ordered to turnover to the Trustee the amount of $1,108.01.

IT IS SO ORDERED.

### JUDGMENT ON DECISION

This matter is before the Court on the trustee's Motion for Turnover and the debtor's objections thereto. The trustee, J. Michael Morris, appears pro se. The debtors appear through Stephen Speth of Speth, King and Riedmiller, Wichita, Kansas. The parties have submitted the matter on stipulations and briefs.[1]

1. The United States Trustee filed a comment    on the trustee's motion for turnover. (*See*

For reasons stated in the decision, IT IS ORDERED that the trustee's Motion for Turnover is granted, and the debtors' are to turnover to the trustee the amount of $1,108.01, the balance in the debtors' checking account as of the date of their bankruptcy filing.

IT IS SO ORDERED.