No. 121,109

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STORMONT-VAIL HEALTHCARE, INC.,
*Appellee*,

v.

HAROLD E. SIEVERS,
*Appellant*.

SYLLABUS BY THE COURT

1.

K.S.A. 61-3505 controls nonwage garnishments.

2.

The interpretation of a statute is a question of law over which this court has unlimited review.

3.

When a statute is plain and unambiguous, this court need not speculate about the legislative intent behind that clear language and will refrain from reading something into the statute that is not readily found in its words.

4.

The judgment debtor has the burden to show some or all of the subject property is exempt from garnishment.

1

5.

Once wages are deposited into a bank account, they lose their identity as "earnings" as defined under K.S.A. 2019 Supp. 60-2310(a)(1).

Appeal from Shawnee District Court; TIM KECK, judge pro tem. Opinion filed April 10, 2020. Affirmed.

*Paul Shipp*, of Kansas Legal Services, of Manhattan, and *Lowell C. Paul*, of the same firm, of Topeka, for appellant.

*Stephanie B. Poyer*, of Butler & Associates, P.A., of Topeka, for appellee.

Before SCHROEDER, P.J., MALONE and STANDRIDGE, JJ.

SCHROEDER, J.:  After Stormont-Vail Healthcare, Inc. (SVH) obtained a consent judgment against Harold E. Sievers, SVH requested orders of garnishment to collect the judgment. Sievers objected to the garnishment order that attached to his property held by Capitol Federal Savings Bank (CFS), arguing the funds in his bank account were earnings exempt from attachment under K.S.A. 61-3505. The district court overruled Sievers' objection after an evidentiary hearing. Upon review of the record, we find the district court correctly determined the funds in Sievers' bank account were not exempt from attachment under K.S.A. 61-3505. We affirm.

FACTS

SVH obtained a consent judgment against Sievers for unpaid medical expenses in the amount of $3,008.09 plus $599.94 in interest. At the hearing, Sievers agreed he owed the debt. He declined to set up a payment plan with SVH and asked SVH to "garnish to the legal amount."

After obtaining the judgment, SVH filed two requests for orders of garnishment: one to attach to Sievers' earnings held by his employer, the State of Kansas, and one to attach Sievers' other property, if any, held by CFS. The nonwage garnishment order attached $707.01 from Sievers' bank account at CFS.

Sievers timely objected to the garnishment order directed to CFS, arguing the funds in his bank account were exempt from attachment through a nonwage garnishment because the funds met the definition of "earnings" under K.S.A. 2019 Supp. 60-2310(a)(1). Relying on our decision in *Dillon Companies v. Davis*, 39 Kan. App. 2d 444, 447, 181 P.3d 570, *rev. denied* 286 Kan. 1177 (2008), the district court overruled Sievers' objection to the garnishment order, finding: "[O]nce Mr. Sievers'[] paycheck was deposited into his bank account, his wages lost their status as 'earnings,' and became garnishable under K.S.A. 61-3505."

Sievers timely appeals.

ANALYSIS

In his only issue on appeal, Sievers argues the district court erred by concluding the wages he earned lost their status as "earnings" once they were deposited into his bank account and became garnishable under K.S.A. 61-3505.

This issue presents a question of statutory interpretation, which is a question of law over which we have unlimited review. See *Nauheim v. City of Topeka*, 309 Kan. 145, 149, 432 P.3d 647 (2019). The most fundamental rule of statutory construction is the intent of the Legislature governs if that intent can be ascertained. *State ex rel. Schmidt v. City of Wichita*, 303 Kan. 650, 659, 367 P.3d 282 (2016). We must first attempt to ascertain "legislative intent through the statutory language, giving common words their ordinary meanings." *Nauheim*, 309 Kan. at 149. When a statute is plain and

3

unambiguous, we need not speculate about the legislative intent behind that clear language and will refrain from reading something into the statute that is not readily found in its words. See *Ullery v. Othick*, 304 Kan. 405, 409, 372 P.3d 1135 (2016). We must not consider isolated parts of an act but must construe all parts *in pari materia.* See *Cochran v. Kansas Dept. of Agriculture*, 291 Kan. 898, 904, 249 P.3d 434 (2011).

*General garnishment procedure in limited action cases*

An order of garnishment aids the judgment creditor in collecting its judgment by allowing the judgment creditor to attach property owned by the judgment debtor but held by the garnishee. See K.S.A. 2019 Supp. 61-3504(a). Garnishment is defined as the procedure in which "the wages, money or intangible property of a person can be seized or attached pursuant to an order of garnishment issued by the court under the conditions set forth in the order." K.S.A. 61-3502. Our garnishment procedure is entirely statutory. See *LSF Franchise REO I v. Emporia Restaurants, Inc.*, 283 Kan. 13, 19, 152 P.3d 34 (2007).

In a limited action case like the one here, the judgment creditor starts the garnishment process by filing a request asking the district court to issue a garnishment order. The request must "designate whether the order of garnishment is to be issued to attach earnings or to attach other property of the judgment debtor." K.S.A. 2019 Supp. 61-3504(b). Depending on the designation provided by the judgment creditor, the garnishment order will attach to the judgment debtor's earnings or his or her other property. Compare K.S.A. 2019 Supp. 61-3507 (order of garnishment, earnings) with K.S.A. 61-3505 (order of garnishment, other than earnings).

The order of garnishment is then served on the garnishee along with a form for the garnishee's answer. K.S.A. 61-3505(a); K.S.A. 2019 Supp. 61-3507(a). When the garnishment involves funds held by a financial institution, the judgment creditor must have a good faith belief the financial institution "has, or will have, assets of the judgment

4

debtor." K.S.A. 2019 Supp. 61-3506(g). In such cases, the garnishment order must include the following statement:  "'If you hold any funds, credits or indebtedness belonging to or owing the judgment debtor, the amount to be withheld by you pursuant to this order of garnishment is not to exceed [110% of the judgment balance still owed].'" K.S.A. 2019 Supp. 61-3506(c). The garnishee has 14 days to send its completed answer to the judgment creditor and/or the judgment debtor. K.S.A. 2019 Supp. 61-3509; K.S.A. 2019 Supp. 61-3510.

Immediately after the garnishee has been served, the judgment creditor must give the judgment debtor notice that:  (1) the order has been served; (2) he or she has a right to demonstrate the subject property is exempt from garnishment; and (3) he or she has a right to request a hearing on such an exemption claim. K.S.A. 2019 Supp. 61-3508(a). The judgment debtor must request the hearing within 14 days after receiving notice from the judgment creditor. K.S.A. 2019 Supp. 61-3508(b). If a hearing is held, he or she has the burden of showing some or all of the subject property is exempt from garnishment. After the hearing, the district court must enter an order "determining the exemption and such other order or orders as is appropriate." K.S.A. 2019 Supp. 61-3508(c).

*Garnishments on intangible property other than earnings*

Relevant to this case, the portion of subject property attached through garnishment depends on the status of the garnishee holding the property. When a garnishment order is issued to attach intangible property other than earnings, then K.S.A. 61-3505 applies. Under K.S.A. 61-3505(b)(1), a nonwage garnishment order has the effect of attaching:

> "*All intangible property*, *funds, credits or other indebtedness* belonging to or owing the judgment debtor, *other than earnings, which is in the possession or under the control of the garnishee*, and all such credits and indebtedness due from the garnishee to the judgment debtor at the time of service of the order." (Emphases added.)

5

When the garnishment order is directed to the judgment debtor's employer, then K.S.A. 2019 Supp. 61-3507 applies. A wage garnishment order has the effect of attaching "the *nonexempt portion* of the judgment debtor's earnings for all pay periods which end while the order is in effect. . . . Nonexempt earnings are earnings which are not exempt from wage garnishment pursuant to *K.S.A. 60-2310*." (Emphases added.) K.S.A. 2019 Supp. 61-3507(b). Under K.S.A. 2019 Supp. 60-2310(b):

> "*Restriction on wage garnishment*. Subject to the provisions of subsection (e), only the aggregate disposable earnings of an individual may be subjected to wage garnishment. The maximum part of such earnings of any wage earning individual which may be subjected to wage garnishment for any workweek or multiple thereof may not exceed the lessor of: (1) Twenty-five percent of the individual's *aggregate disposable earnings* for that workweek or multiple thereof." (Emphasis added.)

In other words, 75 percent of a judgment debtor's earnings cannot be attached by a wage garnishment order. K.S.A. 2019 Supp. 60-2310(a)(1) defines "earnings" as "compensation *paid or payable* for personal services, whether denominated as *wages*, salary, commission, bonus or otherwise." (Emphases added.)

*Funds deposited into a bank account are not "earnings" as defined by K.S.A. 2019 Supp. 60-2310(a)(1).*

Sievers argues the funds paid and electronically deposited into his bank account meet K.S.A. 2019 Supp. 60-2310(a)(1)'s definition of "earnings" and therefore could not be attached through a nonwage garnishment under K.S.A. 61-3505. His argument depends entirely on K.S.A. 2019 Supp. 60-2310(a)(1)'s definition of "earnings" as "compensation paid." Based on this definition, he reasons:

6

1. Wages *paid* are "earnings."

2. Therefore, the wages paid and electronically deposited into his account were "earnings."

3. A nonwage garnishment order attaches to subject property "other than earnings."

4. Therefore, the funds deposited into his account could not be attached by a nonwage garnishment.

At first glance, Sievers' argument appears to apply an ordinary meaning to the word "paid," but the effect of his argument removes K.S.A. 2019 Supp. 60-2310(a)(1)'s definition of "earnings" from the narrow confines of the employer-employee transactional relationship.

K.S.A. 2019 Supp. 60-2310(a)(1)'s *definition* of "earnings" cannot be separated from the *procedure* of a wage garnishment under K.S.A. 2019 Supp. 61-3507. Only an employer, not a financial institution, can act as the garnishee for a wage garnishment. Under K.S.A. 2019 Supp. 61-3507(a), if the judgment creditor is "notified by the garnishee that the judgment debtor *has never been employed by the garnishee* or *the judgment debtor's employment has been terminated*," the judgment creditor must immediately file a release of the garnishment. (Emphasis added.) Therefore, the partial exemption on wage garnishment set out under K.S.A. 2019 Supp. 61-3507—and consequently, K.S.A. 2019 Supp. 60-2310(a)(1)—specifically applies only to the employer-garnishee.

Under K.S.A. 2019 Supp. 61-3507(b), an order for wage garnishment is a continuing garnishment; it remains in effect until the judgment is paid or the garnishment is released, whichever is sooner. And an order for wage garnishment must attach "the

nonexempt portion of the judgment debtor's earnings *for all pay periods which end while the order is in effect*." (Emphasis added.) K.S.A. 2019 Supp. 61-3507(b). The plain language of K.S.A. 2019 Supp. 61-3507(a) read together with K.S.A. 2019 Supp. 61-3507(b) can only mean the employer-garnishee must *continue to withhold* the nonexempt portion of the judgment debtor's earnings *until* the judgment is satisfied or the garnishment is released. Clearly, an employer-garnishee would have no ability to withhold a judgment debtor's wages once those wages have been paid out. Thus, the exemption set out under K.S.A. 2019 Supp. 61-3507(a) and K.S.A. 2019 Supp. 60-2310(a)(1) is expressly limited to the payroll process, not the protection of a given fund.

Because the meaning of "earnings" as defined under K.S.A. 2019 Supp. 60-2310(a)(1) and as applied under K.S.A. 2019 Supp. 61-3507(a)-(b) is inextricably tied to the employer-employee relationship, once a judgment debtor's "earnings" fall outside the employer-employee relationship—i.e., the judgment debtor's compensation for a given pay period is paid out—his or her wages lose their status as "earnings" and become "other than earnings" under K.S.A. 61-3505. Therefore, the district court did not err when it found the funds in Sievers' bank account lost their status as "earnings" and became garnishable under K.S.A. 61-3505.

The *Davis* panel interpreted these statutes and reached the same conclusion when it held "ordinary wages lose their status as earnings when they are deposited into a bank account." 39 Kan. App. 2d at 444. In support, the panel found K.S.A. 61-3507(b)'s limiting language—"for all pay periods which end while the order is in effect"—"applies expressly only to wages that *have not yet been paid*." (Emphasis added.) 39 Kan. App. 2d at 447-48. The panel went on to find: "Because the wage-garnishment statute is not applicable and Dillon's issued a non-wage garnishment, the matter is covered by K.S.A. 61-3505(b)(1)." 39 Kan. App. 2d at 448. The *Davis* panel correctly applied K.S.A. 61-3505 and K.S.A. 61-3507. We find *Davis* persuasive.

In a similar vein, Kansas federal courts have consistently held K.S.A. 60-2310 *itself* requires that wages are "earnings" only while in the hands of the employer-garnishee. For example, in *In re Doughman*, 263 B.R. 905 (Bankr. D. Kan. 1999), the court found the definition of a "wage garnishment" under K.S.A. 60-2310(a)(3) requires an employer to "withhold" the employee's earnings for the payment of a debt, an act which the employer can only accomplish *before* it pays out the employer's earnings:

> "The essence of a wage garnishment proceeding is that the debtor's employer is required to withhold some part of the debtor's earnings for a payment of a debt. The Court need only to look to the statute to conclude that, irrespective of whether the proceeds lose their character as 'earnings' upon deposit into a bank account, the restrictions in K.S.A. § 60-2310 apply only to *wages before they are paid to the debtor*. (Emphasis added.) To read the statute otherwise would read out of it the portion of the definition of 'wage garnishment' referring to *withholding* earnings for payment of a debt." 263 B.R. at 908.

Other courts have interpreted K.S.A. 60-2310 in a like manner. See *In re Adcock*, 264 B.R. 708, 712 (Bankr. D. Kan. 2000) ("[T]he court is persuaded . . . that the restrictions in [K.S.A.] 60-2310(b) apply only to *wages before they are paid to the debtor*." [Emphasis added.]); *In re Resler*, 282 B.R. 246, 248 (Bankr. D. Kan. 2002) ("'[P]aid and deposited' earnings are not subject to the same exemption protection afforded wages which have been earned but remain in the hands of the payor."). Although federal court decisions on issues of state law are not binding on this court, these cases are persuasive to the extent they demonstrate wages are "earnings" under K.S.A. 2019 Supp. 60-2310 only within the confines of the employer-employee relationship.

To support his argument, Sievers claims our Supreme Court's interpretation of the word "paid" in K.S.A. 44-514(a) and 42 U.S.C. § 407(a) (2012) equally applies to K.S.A. 2019 Supp. 60-2310(a)(1). K.S.A. 2019 Supp. 44-514(a) provides: "[N]o claim for [workers] compensation . . . paid, shall be assignable or subject to levy, execution, attachment, garnishment, or any other remedy or procedure for the recovery or collection

9

of a debt." Similarly, 42 U.S.C. § 407(a) (2012) provides that "paid or payable" Social Security benefits shall not be subject to "execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law." Based on these statutes, in *Decker & Mattison Co. v. Wilson*, 273 Kan. 402, 407, 44 P.3d 341 (2002), and *E.W. v. Hall*, 260 Kan. 99, 106, 917 P.2d 854 (1996), our Supreme Court found, respectively, that workers compensation and Social Security benefits maintain their exempt status when they are deposited into a bank account.

Although these cases reach the result argued for by Sievers, his reliance on them is misplaced. Workers compensation and Social Security benefits are exempt from any legal process, garnishment or otherwise, unless a statutory exception applies. See, e.g., K.S.A. 2019 Supp. 44-514(b). By contrast, K.S.A. 2019 Supp. 61-3507 expressly provides that earnings are partially exempt from garnishment *only while* in the hands of the judgment debtor's employer. Because the wage garnishment restriction under K.S.A. 2019 Supp. 60-2310(a)(1) is much narrower in scope than the garnishment restrictions under K.S.A. 2019 Supp. 44-514(a) and 42 U.S.C. § 407(a) (2012), the courts' decisions in *Decker* and *Hall* reflect the importance of a specific statutory exemption not present here.

Finally, Sievers' broad interpretation of "earnings" effectively construes the language "compensation paid" under K.S.A. 2019 Supp. 60-2310(a)(1) to mean "compensation paid and *deposited and traceable to earnings*." Earnings that are paid are not necessarily deposited into a bank account, nor are funds deposited into a bank account necessarily traceable to earnings. Our Legislature has the authority to enact restrictions on garnishment for deposited wages that are directly traceable to earnings as other states have.

The states that have done so limit both the manner in which funds are deposited and their traceability to wages. See Mo. Rev. Stat. § 90.01(d)(1) ("'Property subject to garnishment' does not include funds of the debtor on deposit with a bank or other

10

financial institution in an account in which *all funds* are . . . [*d*]*eposited electronically on a recurring basis*"); Fla. Stat. § 222.11(3) ("Earnings that are . . . credited or *deposited* in any financial institution are exempt from attachment or garnishment for 6 months after the earnings are received by the financial institution if the funds can be *traced* and properly identified as earnings."); Va. Code Ann. § 34-29(d)(1) ("'[E]arnings' means compensation paid or payable for personal services, . . . whether paid directly to the individual or *deposited* with another entity or person on behalf of and *traceable* to the individual"); Cal. Civ. Proc. Code § 704.070(b)(1) ("Paid earnings that can be *traced into deposit accounts* . . . are exempt . . . if prior to payment to the employee they were subject to an earnings withholding order or an earnings assignment order for support."). (Emphases added.)

But our Legislature has not enacted a restriction on garnishment for deposited wages directly traceable to earnings. It is the Legislature's role alone to do so. There is no language in K.S.A. 2019 Supp. 60-2310(a)(1) to support the expansion of "earnings" to include deposited funds that are traceable to earnings. Sievers' reasoning would place a restriction on garnishment where the Legislature has not. Sievers' funds held at CFS were subject to garnishment under K.S.A. 61-3505 as the district court found.

Affirmed.

\* \* \*

STANDRIDGE, J., dissenting: I respectfully dissent from the majority's decision that Harold E. Sievers' wages no longer qualified as earnings exempt from attachment under K.S.A. 61-3505 after his paycheck was electronically deposited into his bank account.

On January 30, 2019, Stormont-Vail Healthcare, Inc. (SVH) filed a request for garnishment naming Sievers as the defendant and Capitol Federal Savings Bank (CFS) as

11

the garnishee. SVH specifically designated the garnishment request as one to attach property other than earnings:

"The judgment creditor, Stormont-Vail Healthcare, Inc., requests that the Court issue an Order of Garnishment to attach *other than earnings* of Harold E. Sievers. The current balance is $3,789.71 (Plus Interest and Costs). The purpose of the garnishment is to recover the judgment due. The judgment amount is the current balance due and may also include costs, fees, interest and any other items included in the Judgment." (Emphasis added).

On February 1, 2019, and consistent with the type of garnishment designated by SVH, the district court issued an "Order for Non Wage Garnishment" and "ORDER OF GARNISHMENT (To Attach Other Than Earnings)" to CFS as the garnishee.

On February 8, 2019, Sievers received his regular paycheck in the net amount of $749.59; the paycheck was electronically deposited into Sievers' checking account at CFS. Before his paycheck was deposited, Sievers had a cash balance of $56.70 in his checking account, which he testified were wages/earnings left over from his prior net pay in the amount of $771.42 electronically deposited on January 25, 2019. So after his paycheck was deposited on Friday, February 8, 2019, Sievers had a total balance of $806.29, all of which were wages from his employment. Notwithstanding the electronic direct deposit of his wages that morning, Sievers' bank card was declined when he tried to make a purchase for approximately $24 at Walmart that afternoon. On Monday, February 11, 2019, Sievers went to CFS and discovered that it had withheld $707.01 from his bank account under the directive set forth in the district court's order of garnishment. CFS also withheld $15 as an administrative garnishment fee.

On February 14, 2019, Sievers requested a hearing on whether the property withheld by CFS was exempt from attachment because it was earnings under K.S.A. 2019 Supp. 61-3507. After the hearing, the district court issued an order overruling

Sievers' objection to garnishment. In its order, the court made one factual finding: "An 'Order of Garnishment (To Attach Other than Earnings)' was issued in the above matter on February 1, 2019, to Capitol Federal Savings Bank." Summarily relying on *Dillon Companies v. Davis*, 39 Kan. App. 2d 444, 181 P.3d 570 (2008), and *In re Adcock*, 264 B.R. 708 (D. Kan. 2001) (cited incorrectly in the court's decision as 262 B.R. 865), the court made one conclusion of law: "[O]nce [Sievers'] paycheck was deposited into his bank account, his wages lost their status as 'earnings,' and became garnishable under K.S.A. 61-3505." The court then stated that it was not making "any other factual findings regarding the evidence and testimony presented."

The district court's order makes clear that its decision was grounded in the law and not in fact. The court affirmatively declined to make a factual finding regarding whether the funds in the account were earnings; instead, it found as a matter of law that once a debtor's wages are deposited into a bank account, they lose their status as earnings for purposes of the earnings exemption in K.S.A. 61-3505. The court did not rely on the language of the statute to make this conclusion of law, in all likelihood because the statutory language does not support such a legal conclusion. In fact, the plain language of the statute supports the opposite conclusion.

There is no dispute between the parties that K.S.A. 61-3505, which governs orders of garnishments other than earnings, is the controlling statute. As noted above, when a statute is plain and unambiguous, this court need not speculate about the legislative intent behind that clear language and will refrain from reading something into the statute that is not readily found in its words. Given these mandates, we need not look to prior cases from this court or cases from foreign jurisdictions but instead to the relevant language of the statute itself:

> "This section shall apply if the garnishment is to attach intangible property other than earnings of the judgment debtor.

13

. . . .

"(b) The order of garnishment shall have the effect of attaching:

(1) All intangible property, funds, credits or other indebtedness belonging to or owing the judgment debtor, *other than earnings*, which is in the possession or under the control of the garnishee, and all such credits and indebtedness due from the garnishee to the judgment debtor at the time of service of the order." (Emphasis added). K.S.A. 61-3505.

K.S.A. 2019 Supp. 60-2310(a)(1) defines "earnings" for purposes of this act as "compensation *paid or payable* for personal services, whether denominated as wages, salary, commission, bonus or otherwise." (Emphasis added.) Under this statutory definition, wages paid are earnings. And K.S.A. 61-3505 applies only to a garnishment of property *other than earnings* of the judgment debtor. Therefore, the wages that were electronically paid to Sievers by his employer via direct deposit to his bank account clearly meet the statutory definition of earnings and are exempt from attachment through garnishment under K.S.A. 61-3505.

Notwithstanding this plain language, the majority finds that the minute Sievers' paycheck was electronically deposited into his bank account, the wages no longer qualified as earnings exempt from attachment under K.S.A. 61-3505. Specifically, the majority finds that the definition of "earnings" set forth in K.S.A. 2019 Supp. 60-2310(a)(1) is inextricably tied and therefore applicable to the word "earnings" as it is used in K.S.A. 2019 Supp. 61-3507 ("[t]his section shall apply if the garnishment is to attach *earnings* of the judgment debtor" [emphasis added]) but wholly inapplicable to the word "earnings" as it is used in K.S.A. 61-3505 ("[t]his section shall apply if the garnishment is to attach intangible property other than *earnings* of the judgment debtor" [emphasis added]). But the majority is doing exactly what it said it could not do: speculating about the legislative intent behind the clear language of the statute and reading something into the statute that is not readily found in its words. In fact, a close reading of the statute affirmatively establishes that the definition of earnings set forth in

14

K.S.A. 2019 Supp. 60-2310 applies to *both* K.S.A. 61-3505 and K.S.A. 2019 Supp. 61-3507.

Although K.S.A. 2019 Supp. 60-2310 deals with wage garnishment, the Legislature did not include this particular statute under Article 7 of Chapter 60 governing attachment and garnishment. Instead, the Legislature enacted the statute under Article 23 of Chapter 60, which relates to exemptions. L. 1963, ch. 303. In its current version, subsection (a) of the statute provides definitions for the overall act and subsection (b) governs restrictions on wage garnishment. K.S.A. 2019 Supp. 60-2310.

Before 1970, K.S.A. 60-2310 did not have a definitional section. See K.S.A. 1969 Supp. 60-2310. In that year, the Legislature amended the statute to add the definitions that still remain in the current version of the statute:

"(a) Definitions. As used in this act, unless the context otherwise requires, the following words and phrases shall have the meanings respectively ascribed to them herein:

(1) 'Earnings' means compensation paid or payable for personal services, whether denominated as wages, salary, commission, bonus or otherwise;

(2) 'Disposable earnings' means that part of the earnings of any individual remaining after the deduction from such earnings of any amounts required by law to be withheld;

(3) 'Wage garnishment' means any legal or equitable procedure through which the earnings of any individual are required to be withheld for payment of any debt; and

(4) 'Federal minimum hourly wage' means that wage prescribed by subsection (a)(1) of section 6 of the federal fair labor standards act of 1938, and any amendments thereto." L. 1970, ch. 238, § 1.

The Legislature amended the statute in 1970 as part of House Bill 1996 and described it as: "An Act relating to attachment and garnishment proceedings; providing certain exemptions and restrictions." The 1970 Act also amended K.S.A. 60-717

15

(attachment and garnishment in regular actions) and K.S.A. 61-2005 (attachment and garnishment in limited action proceedings). L. 1970, ch. 238, §§ 7, 10. Given the 1970 amendments to K.S.A. 60-2310, K.S.A. 60-717, and K.S.A. 61-2005 were all part of the same Act, the definition of "earnings" necessarily applied equally to all statutes amended in that Act. See L. 1970, ch. 238, § 1 ("As used in this act, unless the context otherwise requires, the following words and phrases shall have the meanings respectively ascribed to them herein.").

In 1972, the Legislature amended K.S.A. 60-717 (attachment and garnishment in regular actions) and K.S.A. 61-2005 (attachment and garnishment in limited action proceedings) to distinguish between garnishment proceedings brought to attach property other than earnings and garnishment proceedings brought to attach earnings. L. 1972, ch. 222, as amended by ch. 215, §§ 2, 6. The distinctions provided that

- a nonwage order of garnishment had the effect of attaching property, funds, credits or other indebtedness belonging to or owing the defendant, *other than earnings*; and
- a wage order of garnishment had the effect of attaching the nonexempt portion of the defendant's *earnings* for the entire normal pay period in which the order is served. L. 1972, ch. 222, as amended by ch. 215, §§ 2, 6; see also K.S.A. 1973 Supp. 60-717(c); K.S.A. 1973 Supp. 61-2005(c).

The Legislature amended the statutes as part of House Bill 1870 and described it as: "An Act relating to attachment and garnishment." L. 1972, ch. 222, as amended by ch. 215, § 4. The 1972 Act also amended the introductory language to the definitional subsection of K.S.A. 60-2310 by adding the language in italics below:

16

"(a) Definitions. As used in this act *and the acts of which this act is amendatory*, unless the context otherwise requires, the following words and phrases shall have the meanings respectively ascribed to them[.]" L. 1972, ch. 222, as amended by ch. 215, § 4.

The language in italics is critical to our reading of the statute today. Although the garnishment statutes have been amended since 1972 to separate and renumber the wage and nonwage statutes, the clear and unambiguous language of K.S.A. 60-2310(a) dictates that the definition of "earnings" applies to statutes that were part of the 1972 Act, even if those statutes were thereafter amended or renumbered. To find otherwise, as the majority does here, is to completely ignore the plain and unambiguous language in the current statute: "As used in this act and the acts of which this act is amendatory, unless the context otherwise requires, the following words and phrases shall have the meanings respectively ascribed to them." K.S.A. 2019 Supp. 60-2310.

Before concluding, I would note that SVH specifically designated the garnishment at issue on appeal as one under K.S.A. 61-3505, which applies to a garnishment of property other than earnings of the judgment debtor. And, at the same time it applied for and received an order of garnishment directing CFS to attach property belonging to Sievers *other than his earnings* under K.S.A. 61-3505, SVH applied for and received an order of garnishment directed to Sievers' employer to attach his *wages* under K.S.A. 2019 Supp. 61-3507. The wage garnishment necessarily would have been subject to a partial exemption in order for Sievers to retain enough of his wages to support himself during the time period in which the garnishment was in effect. K.S.A. 2019 Supp. 61-3507. But in lieu of attaching partial wages through his employer, SVH chose to attach all of Sievers' wages as soon as those wages were electronically deposited into Sievers' checking account. SVH's actions in this regard appear to undermine the purpose of the wage exemption, which our Supreme Court stated was to protect a class of persons who are largely dependent on their wages for support, as well as their families and dependents who look to them for a living, and that such a statute should receive a liberal construction

17

rather than one which would defeat the benevolent object aimed to be accomplished. *Miller v. Keeling*, 185 Kan. 623, 627-28, 347 P.2d 424 (1959).

Based on the clear and unambiguous language of the governing statute, I would reverse the decision of the district court and hold the wages that were electronically paid to Sievers by his employer via direct deposit to his bank account clearly meet the statutory definition of earnings and are exempt from attachment through garnishment under K.S.A. 61-3505.